John WILBURN, Defendant-Appellant,

v.

STATE of Indiana, Respondent-Appellee.

No. 22A01–8607–PC–186.

Court of Appeals of Indiana, First District.

Nov. 20, 1986.

Rehearing Denied Jan. 9, 1987.

---

Susan K. Carpenter, Public Defender, Novella L. Nedeff, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, John Wilburn (Wilburn), appeals the decision of the Floyd Circuit Court denying his Petition for Post-Conviction Relief.

We affirm.

## STATEMENT OF THE FACTS

On August 20, 1975, Wilburn was charged with possession of stolen property regarding a stolen tractor-mower. On May 3, 1976, Wilburn filed a Petition for Election of Treatment regarding drug use. A hearing was held on Wilburn's petition and guilty plea. He was approved for treatment by court order on June 11, 1976. Shortly thereafter Wilburn violated the rules of his drug treatment program, and following hearings on June 29 and July 8, 1976, he was dismissed from the program. On July 27, 1976, Wilburn was sentenced on his guilty plea to his original charge to an indeterminate period of one to five years in prison. Wilburn subsequently served approximately 18 months before he was released. He remained at liberty until October 1980, when he was arrested for possession of and dealing marijuana. Wilburn was tried and convicted on these charges on March 5, 1981, and was also found to be a habitual offender.

In March of 1982, Wilburn contacted the public defender's office, and in May of 1982, the public defender made the first of four requests for a transcript of Wilburn's guilty plea. On October 19, 1983, the Floyd Circuit Court Reporter notified the public defender that, due to a defective tape, no transcript could be prepared. Wilburn filed his post-conviction relief petition on September 18, 1984, amended it on Janu-

ary 28, 1985, and a hearing was held on it on May 6, 1985. From the denial of this petition, Wilburn now appeals.

### ISSUES

I. Whether the trial court erred in finding that Wilburn failed to prove that he was not adequately advised at his guilty plea hearing.

II. Whether application of the doctrine of laches violates Wilburn's right to challenge the validity of a conviction used for subsequent habitual offender status.

III. Whether the trial court erred in finding that Wilburn was guilty of laches.

### DISCUSSION AND DECISION

ISSUE I: *Non-reconstructability of Record*

Wilburn alleges he did not give a knowing, voluntary, and intelligent guilty plea since the trial court did not adequately advise him of his rights according to IND. CODE 35–4.1–1–3, the minimum requirements under *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, or the effect of electing treatment as required under IND.CODE 16–13–6.1–17 and –18. Wilburn argues he carried his burden of proof on these allegations by proving that the record of the trial court's advisements is unavailable and unable to be reconstructed.

In proving the insufficiency of the record in this case, Wilburn submitted the following evidence at his post-conviction relief hearing. He submitted the court reporter's affidavit confirming the defectiveness of the tape and the dates the public defender submitted requests for transcripts. The former deputy prosecutor who prosecuted the case submitted an affidavit confirming he did not have sufficient recollection to recreate the record. Wilburn's former defense attorney testified he could not remember the presence or absence of specific advisements given by the trial judge. The trial judge who presided throughout the

case died in March 1981. Likewise, Wilburn was unable to testify as to what advisements were given or omitted. The trial court concluded that Wilburn failed to prove that he was not properly advised. This was error.

▬▬▬ The loss of a record or transcript of a guilty plea hearing does not, per se, require the plea to be vacated. *Zimmerman v. State* (1982), Ind., 436 N.E.2d 1087. Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c) should first be resorted to as a means to produce a record for review on appeal instead of ordering a new trial. *Zimmerman, supra.* However, where the record of the guilty plea hearing neither can be found nor reconstructed, granting of post-conviction relief and a new trial is appropriate. *Id.; Gallagher v. State* (1980), 274 Ind. 235, 410 N.E.2d 1290. Wilburn submitted evidence that reconstruction of the record was impossible; the tape of his hearing was unable to be transcribed, and all parties present at the guilty plea hearing either had died or could not remember the details. *Boykin, supra,* requires advisements *on the record.* We cannot imply that the trial court advised Wilburn of his constitutional and statutory rights so as to render his plea voluntarily, knowingly and intelligently given.

ISSUES II and III: *Due Process; Laches*

Although we hold that Wilburn has presented a valid claim for relief, we now turn to the issue of whether the equitable doctrine of laches can preclude relief from a claim he was not advised of his constitutional and statutory rights.

▬▬ Wilburn claims that to hold the equitable doctrine of laches as a bar to post-conviction relief proceedings violates his constitutional right to due process and effectively prevents him from challenging the conviction used to increase an unrelated penalty. Wilburn's arguments here were decided adversely to him in *Cheney v. State* (1986), Ind.App., 488 N.E.2d 739. Our supreme court and appellate courts have long recognized the defense of laches

to constitutional errors alleged in post-conviction relief petitions. *See Lacy v. State* (1986), Ind., 491 N.E.2d 520; *Cheney, supra; Badelle v. State* (1986), Ind.App., 487 N.E.2d 844; *Morrison v. State* (1984), Ind. App., 466 N.E.2d 783. Laches has been held to apply even when it has been affirmatively shown that, on the record, certain advisements were not given. *See Mottern v. State* (1984), Ind.App., 466 N.E.2d 488; *Morrison, supra.* Since we assume advisements were not given when the absence of a record has been proven, logically, laches could still apply under the circumstances of this case. Due process also cuts both ways. In *Cheney, supra,* we noted that due process requires all parties to act promptly and diligently in bringing matters before the court, citing *Callahan v. State* (1966), 247 Ind. 350, 214 N.E.2d 648, [*cert. denied* (1966), 385 U.S. 942, 87 S.Ct. 305, 17 L.Ed.2d 222].

In the case at bar, the trial court also ruled the State met its burden of proof on its defense of laches. Laches has been defined by our supreme court in *Frazier v. State* (1975), 263 Ind. 614, 616–17, 335 N.E.2d 623, 625:

> "The neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and thus operating as a bar in a court of equity." [Citations omitted.]

In other words, it has been held it is the State's burden to show, by a preponderance of the evidence, (1) an unreasonable delay, and (2) prejudice. *Twyman v. State* (1984), Ind., 459 N.E.2d 705.

Since Wilburn did not have the burden of proof on this issue, our standard of review on appeal is the sufficiency of the evidence. *Gregory v. State* (1986), Ind., 487 N.E.2d 156. We will not reweigh the evidence or determine the credibility of witnesses, instead we look only to that evidence most favorable to the judgment, together with all reasonable inferences flowing therefrom. If there is probative evidence which supports the trial court's judgment, it will be affirmed. *Harrington v. State* (1984), Ind.App., 466 N.E.2d 1379, *trans. denied.*

In the case at bar, Wilburn was convicted and sentenced to prison on July 27, 1976, and his post-conviction relief inquiries were initiated in March of 1982. Wilburn testified that he asked his former defense attorney what he could do about his conviction but was told it could not be attacked; relying on this advice Wilburn did not inquire further until 1982. However, the trial court apparently did not believe this uncorroborated statement. In its findings and conclusions, the trial court found that Wilburn provided no justification for his delay in filing a post-conviction relief petition, and concluded that Wilburn should have been put on inquiry as to the availability of post-conviction relief but failed without cause to inquire or take any steps to determine the availability of relief, even though counsel was available to him. For us to consider Wilburn's testimony contradicting the trial court's finding and conclusions would be an impermissible reweighing of the evidence. *Harrington, supra.*

It has been held that lapse of time alone does not constitute laches, *Twyman, supra; Frazier, supra,* but a long delay in filing one's post-conviction relief petition may, in and of itself, be sufficient to infer that the delay was unreasonable. *See Lacy, supra; Morrison, supra.* The court in *Lacy, supra,* still required some showing of resulting prejudice.

However, we believe prejudice occurs in litigation by the mere passage of time. Witnesses are dispersed, memories are dimmed, police officers and witnesses are inconvenienced in an effort to find old files and statements, all of which renders reconstruction of the case very difficult. In this regard, the amount of prejudice is in direct correlation to the length of time. All of

this occurs because a defendant sleeps on his rights until a prior conviction comes back to haunt him, such as in the case at bar when a prior conviction is used to support an enhanced habitual offender sentence. This court and our supreme court have recognized that a change of circumstances, such as incarceration, provides a petitioner with adequate opportunity and incentive to inquire about his rights and remedies. *See Gregory, supra; Parrish v. State* (1986), Ind.App., 498 N.E.2d 73; *Cheney supra; Pinkston v. State* (1985), Ind. App., 479 N.E.2d 79, *trans. denied; Morrison, supra.*

We read *White v. State* (1986), Ind., 497 N.E.2d 893, to be a substantial retreat from earlier cases involving post-conviction remedies. That case condemned collateral attacks on old judgments. The *White* court quoted *United States v. Timmreck* (1979), 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634:

> "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice."

*White, supra* at 903. *White* further stated:

> "Routine reversal of convictions on technical grounds imposes substantial costs on society. Chief Justice Designate Rehnquist recently enumerated these costs, and we paraphrase his description of them. Jurors, witnesses, judges, lawyers, and prosecutors may be required to commit further time and other resources to repeat a trial which has already taken place. The victims are caused to relive frequently painful experiences in open court. The erosion of memory and the dispersal of witnesses may well make a new trial difficult or even impossible. If the latter is the case, an admitted perpetrator will be rewarded with freedom from prosecution. Such results prejudice society's interest in the prompt administration of justice, reduce the deterrent value of any punishment, and hamper the

rehabilitation of wrongdoers. *United States v. Mechanik* (1986), [——] U.S. [——], 106 S.Ct. 938, 89 L.Ed.2d 50." *White, supra* at 905.

Wilburn received a sentence of one to five years which was served. Even if a reversal occurs, the time served cannot be repeated nor erased. It obviously did not occur to him that the procedure was invalid until over six years later when he was again in prison on a habitual charge. Only then did he mount a collateral attack on the original judgment.

■ The rule here should follow the rationale in *White, supra.* Long periods of time alone should be sufficient evidence of prejudice to the State to defeat an attack on an ancient conviction. As quoted above, *White* recognizes that long periods of time manifest inherent prejudice. *White* now imposes an additional burden on defendants to prove prejudice when collaterally attacking their guilty plea convictions. In doing so, it used the rationale in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and its progeny, which impose a burden to prove prejudice on a defendant alleging ineffective assistance of counsel. For prejudice to be proven, a defendant must show a reasonable probability that but for the alleged error, he would not have pleaded guilty but would have insisted on going to trial. *White, supra.* Wilburn's claim here is that but for his counsel's advice that he had no remedy to attack his conviction, he would have filed a petition for post-conviction relief earlier. The trial court did not believe this claim. Wilburn sought to attack his original conviction only after he was sentenced as a habitual criminal. Where a defendant acquiesces in his conviction and sentence for six years until faced with a habitual offender sentence, it belies the notion that, but for an alleged error, he would have insisted on going to trial. Yet this same lack of diligence alone would not support a finding of laches under current standards.

■ *White, supra,* sought to curb the abuses created under *German v. State*

(1981), Ind., 428 N.E.2d 234, that undermined the finality of convictions. As stated in *White, supra* at 900:

> "Finally, the *German* rule has exposed our postconviction relief procedures to incredible abuse. It has created a virtual tidal wave of petitions by prisoners, *some of whom have slumbered on their rights for five or ten years.* It has, by definition, afforded relief only to prisoners who have asserted their guilt before the trial judge and never recanted. It has visited felony convictions with all the finality of default judgments in small claims court." (Our emphasis.)

A long period of delay represents more than mere evidence of unreasonableness, it also manifests inherent prejudice to the State.

The situation before us is different because with an absent record, minimal advisements required under *Boykin, supra,* and *White, supra,* have not been met. However, Wilburn's unexcused and unreasonable delay was shown to cause actual prejudice to the State.

First, Wilburn's delay from July 27, 1976, the date of his conviction, until March of 1982, the date of first inquiry, seriously eroded his or the State's chance to reconstruct the record of his guilty plea under A.R. 7.2(A)(3)(c), (4). Although Wilburn made several inquiries for transcripts of the record from May of 1982 and didn't receive word until October 19, 1983, that the tape of his hearing was defective, Wilburn continued to amend his petition up until January 28, 1985. During this time, Wilburn, his original attorney, and the original deputy prosecutor could not sufficiently recollect the particulars of Wilburn's guilty plea hearing. The Honorable Paul J. Tegart, the trial judge who presided throughout Wilburn's case, died in March of 1981. The record revealed Judge Tegart kept an advisement form he used for guilty pleas, which was amended to keep abreast of developing case law. Wilburn's original attorney testified that Judge Tegart religiously went through his detailed advice of rights form with defendants, and had Wilburn inquired earlier, the now deceased judge may have been able to remember and certify each right was read to Wilburn at his guilty plea.

Second, the State presented evidence that several of its witnesses in the case either died or were unable to be located. Detective Hubbard testified that he and Detective Parsons conducted the investigation of this case. Dectective Hubbard testified that he reviewed information from a "confidential informant" that Wilburn had a stolen tractor-mower; this confidential informant died in 1980. Detective Hubbard also received information from an Officer Witt, now deceased, that he had information from an "informant" that the mower had been sold to Paul Sherrill. The identity of this second informant became unavailable when Officer Witt died. Apparently the victim is able to testify his tractor-mower was stolen, and he still has the recovered evidence. Mr. Sherrill is also able to testify that he purchased the tractor-mower from Wilburn. Wilburn makes much of the fact that the tractor still exists, the owner is still available to testify that it was stolen and the person who purchased it from Wilburn near the time of the theft is still available to testify to that fact. Therefore, Wilburn claimed the State was not prejudiced and can still prove its case, and does not need the confidential informant. Admittedly, unexplained possession of stolen property near the time of the theft is prima facie evidence that the possessor is the thief. Nevertheless, in a tried case, such prima facie case is capable of rebuttal. Identification is involved which would be muddied by an elapse of time. Also, Wilburn may offer an explanation of how he innocently came by the stolen property. The confidential informant could then be used to rebut such contention.

■ The State may prove prejudice by showing that critical evidence is missing or unavailable, or that witnesses are deceased or their whereabouts unknown which would make it impossible or extremely difficult to retry the petitioner. *See Cheney,*

*supra; Pinkston, supra; Harrington, supra.*

We hold there is sufficient evidence to support the trial court's ruling in this issue; therefore, the denial of Wilburn's post-conviction relief petition is affirmed.

Judgment affirmed.

ROBERTSON, P.J., concurs.

RATLIFF, J., dissents with opinion.

RATLIFF, Judge, dissenting.

I agree that the inability to produce or reconstruct the record of the guilty plea mandates reversal unless the state has sustained its defense of laches. However, I disagree with the majority's resolution of the laches issue.

In *Lacy v. State* (1986), Ind., 491 N.E.2d 520, our supreme court held the state's evidence was insufficient to establish prejudice even in the face of an eleven year delay in seeking post-conviction relief. In *Lacy,* our supreme court stated:

> "However, for the State to prevail in its defense of laches, there must also be sufficient evidence of resulting prejudice. Upon this issue, the evidence at the post-conviction relief hearing consisted primarily of testimony of the manager at the Marion County prosecutor's office. She stated that the prosecutor's case files which are more than ten (10) years old are destroyed, and that no record is kept, but that she had not investigated to determine whether the prosecutor's file for this case was still in existence. There was also testimony from the deputy prosecutor that she had obtained names of witnesses from the court's file, but was unable to find a listing for any of them in the phone directory. This is an extremely small quantum of evidence upon which to infer prejudice. It falls far short of the evidence which supported the finding of laches in *Pinkston v. State* (1985), Ind.App., 479 N.E.2d 79; *Harrington, supra;* and *Dillon v. State* (1985), Ind.App., 479 N.E.2d 610 (rehearing granted, explaining scope of appellate review 482 N.E.2d 747). The State failed to present any evidence regarding the availability or recollection of the investigating officers or the existence or content of the police investigative file. There was also no showing of reasonable diligence used in attempting to locate the witnesses shown on the back of the information. Further, there is no evidence that any attempt was made to locate the prosecutor's notes or to determine whether they had actually been destroyed in accordance with office policy of discarding files more than ten years old.
>
> The State has thus failed to provide any evidence upon which a reasonable inference of prejudice may be drawn. Given the length of delay, we can only speculate that significant prejudice may exist. However, because of the failure of proof, we are compelled to grant transfer, vacate the opinion of the Court of Appeals, and remand to the postconviction trial court for it to grant Lacy's petition for post-conviction relief ..."

491 N.E.2d at 521–22.

In his concurring opinion in *Woodford v. State,* (1985), Ind.App., 484 N.E.2d 563, Justice Shepard observed:

> "While the trial judge might well have found that the appellant's delay in filing his petition was unreasonable under circumstances permitting diligence, the evidence offered by the prosecutor on the question of prejudice to the State was insufficient to establish an equitable bar. Other than the passage of time, the only specific prejudice cited in the State's brief or, apparently, offered at trial has been the disposal of those items of physical evidence kept in the Indianapolis Police Department property room. How the loss of these items damages the State's case is unexplained. Whether the other items of tangible evidence which were kept elsewhere are still available is also unexplored. We are not provided with any testimony about the availability of the witnesses or the investigating officer."

484 N.E.2d at 566.

*Lacy* lays down a strict standard which the state must meet to establish the preju-

dice component of a defense of laches to a postconviction remedy proceeding. In my view, that standard has not been met.

To the extent the majority opinion deals with the effect of the lapse of time on the ability to reconstruct the record of the guilty plea hearing, it misses the mark. The point is not whether the state has been prejudiced in its ability to reconstruct the guilty plea hearing. Rather, the question is whether the state has been prejudiced in its ability to prosecute the charge. The majority opinion clearly discloses the state is not impaired in its prosecution of the charge. The victim of the theft is available and can testify his tractor-mower was stolen. The purchaser is available and able to testify he purchased the tractor-mower from Wilburn. The tractor-mower still exists. Thus, the state can make its case against Wilburn. The inability to produce the confidential informant does not reduce the state's case to impotency.

The majority further relies upon *White v. State* (1986), Ind., 497 N.E.2d 893, for the proposition that long delays are enough, standing alone, to constitute prejudice. I believe the majority extends the rationale of *White* beyond that expressed by our supreme court. *White* dealt with a situation where a post-conviction petitioner proved only failure of the trial judge to advise him as required by statute, prior to accepting his guilty plea. *White* and recent decisions following have held such a defendant must prove not only an omitted advisement, but also that had the advisement been given such would have changed his decision to plead. *See e.g., Simpson v. State* (1986), Ind., 499 N.E.2d 205; *Reid v. State* (1986), Ind., 499 N.E.2d 207; *Merriweather v. State* (1986), Ind., 499 N.E.2d 209. The court, in *White*, said it would look to the entire record to see if the defendant's plea was knowingly, voluntarily, and intelligently entered. Here, there is no record. Thus, we do not know if Wilburn knew or was advised of his *Boykin* rights. *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Our supreme court in *White* made it clear that unless the record revealed the defendant knew or was

advised of his *Boykin* rights, his guilty plea must be vacated. Thus, *White* has no application to the facts of this case.

The state can prevail only if it has succeeded in proving laches. The burden of proof on that issue is upon the state. *Twyman v. State* (1984), Ind., 459 N.E.2d 705. Under the holding in *Lacy*, the state has not met that burden. The majority's attempt to use the decision in *White* to shift the burden to Wilburn is an erroneous interpretation and application of *White*.

I would reverse the judgment with instructions to grant Wilburn's petition and remand for trial. Therefore, I respectfully dissent.