**Gregory Charles HALL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 02A05–0401–PC–48.**

Court of Appeals of Indiana.

Dec. 13, 2004.

Lorinda Meier Youngcourt, Huron, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Gregory Charles Hall, challenges the denial of his petition for post-conviction relief. Upon appeal, Hall claims that the trial court erred in denying his petition because there is no record of his having been advised of his rights under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

We reverse and remand.

The facts most favorable to the decision of the post-conviction court reveal that Hall was charged with Burglary as a Class C felony on July 20, 1982. On April 6, 1983, Hall entered a guilty plea. On April 27, 1983, the trial court accepted Hall's plea and imposed a five-year suspended sentence with two years on probation. Eighteen and a half years later, on October 25, 2001, Hall filed a petition for post-conviction relief. On May 13, 2003, Hall filed an amended petition alleging for the first time that he did not enter into his guilty plea knowingly, intelligently, and voluntarily because he was not advised of his *Boykin* rights.[1] The trial court's file contains no transcript of the April 6 or April 27, 1983 hearings. No other documents exist which indicate that Hall was advised of his *Boykin* rights. Therefore, on July 8, 2003, the post-conviction court conducted a hearing with respect to reconstruction of the record of the guilty plea hearing pursuant to Indiana Appellate Rule 31.[2]

1. In *Boykin*, the United States Supreme Court held that, before accepting a guilty plea, a trial court must be satisfied that an accused is aware of his rights against self-incrimination, to trial by jury, and to confront his accusers. 395 U.S. at 243, 89 S.Ct. 1709.

   We do not discern from the State's response to Hall's amended petition that the State admitted to the validity of Hall's claim. Indeed, the State appears to claim that Hall was, at some point, advised of or knew of his rights under *Boykin*.

2. Indiana Appellate Rule 31 states in relevant part:

   "Statement Of Evidence When No Transcript Is Available

   A. Party's Statement of Evidence. If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be attached to the motion.

   B. Response. Any party may file a verified response to the proposed statement of evidence within fifteen (15) days after service.

   C. Certification by Trial Court or Administrative Agency. Except as provided in Section D below, the trial court or Administrative Agency shall, after a hearing, if necessary, certify a statement of the evidence, making any necessary modifications to statements proposed by the parties. The certified statement of the evidence shall become part of the Clerk's Record.

   D. Controversy Regarding Action of Trial Court Judge or Administrative Officer. If the statements or conduct of the trial court judge or administrative officer are in controversy, and the trial court judge or administrative officer refuses to certify the moving party's statement of evidence, the trial court judge or administrative officer shall file an affidavit setting forth his or her recollection of the disputed statements or conduct. All

At this hearing, Robert L. Hines, the trial judge who had presided over Hall's guilty plea hearing, Bruce Cowen, the attorney who represented Hall at the time, and the deputy prosecuting attorney at the time, Gregory L. Fumarolo, all testified that they had no specific recollection of the guilty plea hearing. Nevertheless, Judge Hines testified that he was aware at the time of Hall's hearing that defendants must be advised of their *Boykin* rights and that he recalled no instance where it was revealed that he had failed to do so. Attorney Cowen testified that, as far as he could recall, Judge Hines's hearings had always included "the normal required advisements." Transcript at 46. Attorney Fumarolo testified that he customarily attempted to guard against failure to advise defendants of their *Boykin* rights.

However, Judge Hines testified that it was "probably" common practice to specifically advise defendants who were pleading guilty, but he also stated, "I don't know that we had a customary practice." *Id.* at 14. Judge Hines, in response to the question of whether the regular advisements by the court and attorneys would have included the *Boykin* rights, stated, "Well, I really can't answer since I can't recall what anyone said, specifically." *Id.* at 16. Attorney Fumarolo was asked, "if there had been a guilty plea hearing presided over by Judge Hines at which the *Boykin* rights were not mentioned, would you have found that striking and perhaps [a] very memorable occasion?" He responded, "Well, no … I can't … say that." *Id.* at 29. Attorney Cowen testified that, although unlikely, it was possible that Judge Hines did not properly advise Hall. Hall's testimony revealed nothing regarding whether he was properly advised of his rights.

On September 15, 2003, by agreement of the parties, Hall filed the affidavit of Phyllis Reed, the court reporter at the time of Hall's guilty plea. Ms. Reed's affidavit indicated that she had reviewed the docket sheet in Hall's case and had no independent recollection of Hall's guilty plea hearing. The parties also stipulated that no other person could be shown to have any specific recollection of Hall's guilty plea hearing. On December 4, 2003, the post-conviction court issued findings and conclusions denying Hall's post-conviction petition.

■ Before addressing the merits of Hall's claim, we note our standard of review. Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). Instead, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* The petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Timberlake*, 753 N.E.2d at 597. Because he is appealing from a negative judgment, to the extent his appeal turns on factual issues, Hall must establish that

verified statements of the evidence and affidavits shall become part of the Clerk's Record."

Appellate Rule 31 appears to call for the reconstruction of the record by affidavit, a hearing being contemplated as a supplement to this process but not necessarily a substitute. In his request for the hearing to reconstruct the record, Hall stated that if the trial court preferred to reconstruct the record by affidavit, then it should deny his request for the hearing. The trial court, by holding the hearing, apparently preferred to reconstruct the record in that manner. We express no opinion over whether this is the proper manner to proceed in such cases. Because neither party claims error in this regard, we will not further address the issue.

the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the post-conviction court's decision only if the evidence is without conflict and leads only to a contrary conclusion. *Id.*

■ At the heart of Hall's current argument is his claim that he was not properly advised of his constitutional rights before pleading guilty. In *Boykin, supra*, the United States Supreme Court held that it was reversible error for the trial court to accept a guilty plea without creating a record which affirmatively showed that the plea was knowing and voluntary. 395 U.S. at 242, 89 S.Ct. 1709. Specifically, the *Boykin* decision requires that the record must show, or there must be an allegation and evidence which shows, that the defendant was informed of, and waived, three specified federal constitutional rights: the Fifth Amendment right against self-incrimination and the Sixth Amendment rights to trial by jury and to confront one's accusers. 395 U.S. at 243, 89 S.Ct. 1709. The *Boykin* Court held that the waiver of the defendant's rights cannot be presumed from a silent record. *Id.*

In *Zimmerman v. State*, 436 N.E.2d 1087 (Ind.1982), the Indiana Supreme Court was faced with a situation wherein a defendant had pleaded guilty in 1975. Over four years later, he petitioned for post-conviction relief claiming that his plea was not knowingly, voluntarily, and intelligently entered. In the time between his plea hearing and the petition, the tape recording of the hearing had been lost or inadvertently destroyed. However, the trial judge who had accepted the plea and the prosecutor who appeared at the hearing indicated that they had made "copious notes" of the hearing. *Id.* at 1087. The post-conviction court therefore ordered the State to submit a reconstructed record pursuant to former Indiana Appellate Rule 7.2(A)(3)(c).[3] The State submitted such a record over the petitioner's objection. Upon appeal, the *Zimmerman* court concluded that "the loss of a record or transcript of a guilty plea hearing does not require a vacation of the plea, per se," because the Appellate Rules provide a means to produce a record for review upon appeal. *Id.* at 1088. The court noted that an exception to this rule was where reconstruction of the record was not possible. *Id.* at 1089. Because the petitioner in *Zimmerman* had not availed himself of the provisions of the Appellate Rules allowing him to reconstruct the record, but instead stood upon his mistaken belief that a lost record was the equivalent of a silent record, the court affirmed the denial of his petition. *Id.*

Following the precedent laid in *Zimmerman* was *Wilburn v. State*, 499 N.E.2d 1173 (Ind.Ct.App.1986), *trans. denied.* In *Wilburn*, the defendant had pleaded guilty in 1976 and filed a post-conviction petition in 1984 claiming a violation of his *Boykin* rights. To support his claim, the petitioner submitted: an affidavit of the court reporter stating that the tape recording of his hearing was defective, the affidavit of the former deputy prosecutor stating that he had insufficient memory of the hearing to reconstruct the record, and the affidavit of Wilburn's former defense attorney stating he could not remember whether the petitioner had been advised by the trial judge. The trial judge had died in 1981. Wilburn himself was unable to testify as to what advisements he was given. The First District of this court held that it was error for the post-conviction court to have concluded that Wilburn failed to prove that

---

3. The current provision governing the reconstruction of the record is Appellate Rule 31.

he was not properly advised. *Id.* at 1175. Citing former Appellate Rule 7.2(A)(3)(c) and *Zimmerman*, the court stated that where the record of the guilty plea hearing can neither be found nor reconstructed, granting post-conviction relief and ordering a new trial is the appropriate remedy. *Id.* The court concluded that Wilburn had submitted evidence that reconstruction of the record was impossible because "all parties present at the guilty plea hearing either had died or could not remember the details." *Id.* The court held that it could not infer that the trial court had properly advised Wilburn. *Id.* Indeed, the court later stated that it would "assume advisements were not given when the absence of a record has been proven."[4] *Id.* at 1176.

A similar determination was made in *Corder v. State*, 516 N.E.2d 71 (Ind.Ct. App.1987), wherein the defendant pleaded guilty in 1978 and brought a petition for post-conviction relief in 1985 claiming that he had not been advised of his *Boykin* rights. The record of Corder's plea hearing no longer existed. The court observed that, pursuant to *Zimmerman*, the loss of the transcript or record of the plea hearing does not per se require the vacation of the guilty plea, and that the petitioner must attempt to reconstruct the record pursuant to the Appellate Rules, if possible. *Id.* at 72. The court held that reconstruction of the record in that case was impossible because Corder had presented uncontested evidence that all the parties present at the guilty plea hearing were either dead or could not remember the details of the proceeding. *Id.* As did the *Wilburn* court, the *Corder* court held because *Boykin* requires advisements on the record, it could not infer that Corder had been advised of his rights.[5] *Id.*

A case in which it was held that reconstruction of the record was not impossible is *Curry v. State*, 674 N.E.2d 160 (Ind. 1996). Curry had pleaded guilty to operating while intoxicated in 1980. In 1993, he filed for post-conviction relief after learning that the tape recordings of his hearing had been "recycled" and no longer existed. Curry thus claimed that there was no record demonstrating that he had been advised pursuant to *Boykin*. Our Supreme Court affirmed the post-conviction court's denial of Curry's petition. The *Curry* court cited *Zimmerman* and Appellate Rule 7.2(A)(3)(c) and stated, "a determination that it is impossible to reconstruct the record will be a rare finding, as compliance with Appellate Rule 7.2 will almost always provide a basis by which the merits of the claim may be determined." 674 N.E.2d at 162. The court noted that Curry failed to present either an actual or reconstructed record upon which his claim could be determined. Thus, the record was not "silent" as to whether Curry was properly advised. Instead, there was no record. *Id.* The *Curry* court also rejected the claim that reconstruction of the record was impossible. To support his claim of impossibility, Curry had presented only his own testimony and an affidavit that the record had been discarded. The post-conviction judge, who had originally accepted Curry's plea, had found that the record was not impossible to reconstruct, stating that although he had no specific recollection of the matter, it was most likely that Curry had been represented by counsel. *Id.* at 163. The *Curry* court distinguished the case from *Corder* and *Wilburn*, noting that, unlike the defendants in those cases, Curry had

---

4. The court made this statement in the context of determining that the State had established the affirmative defense of laches.

5. Unlike the *Wilburn* court, the *Corder* court rejected the State's defense of laches.

not established that *all* of the persons present at the guilty plea hearing had died or could not remember the details of the proceeding. *Id.* Indeed, the court noted that Curry's own recollection of events could have formed the basis for an affidavit to reconstruct the record pursuant to Appellate Rule 7.2(A)(3)(c). Furthermore, Curry acknowledged that neither the probation officer, the deputy prosecutor, nor other persons potentially present at the guilty plea hearing had been contacted in order to determine if they had any memory or notes regarding the hearing. *Id.* at 164. Therefore, Curry failed to present a record of the hearing and had not demonstrated that his record was "silent" regarding whether he had received the necessary *Boykin* advisements. *Id.*

The State argues that the legal landscape created by *Corder* and *Wilburn* was altered by the decision of the United States Supreme Court in *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In *Parke,* the defendant challenged two of the convictions that were being used to support the charge that he was a "persistent felon" under Kentucky law. Specifically, the defendant claimed that the two prior convictions were invalid in that there was no proof that he had been advised of his *Boykin* rights before pleading guilty. The case eventually made its way to the United States Supreme Court to decide whether Kentucky's procedure for determining the validity of a prior conviction under the persistent felon law violated the defendant's due process rights. Under the relevant Kentucky law, when a defendant challenges a previous conviction, the Commonwealth must prove the existence of the judgment upon which it intends to rely. *See* 506 U.S. at 24, 113 S.Ct. 517. Once this is done, a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some

procedural irregularity occurred in the earlier proceeding. *Id.* If the defendant so refutes the presumption of regularity, the burden shifts back to the Commonwealth to affirmatively show that the underlying judgment was entered in a manner that did protect the defendant's rights. *Id.*

In response to the question of whether Kentucky's system was valid under *Boykin,* the Justices stated that in their view, "Kentucky's burden-shifting rule easily passes constitutional muster." *Id.* at 28, 113 S.Ct. 517. The *Parke* Court found no tension between the Kentucky procedure and *Boykin.* The Court noted that the case before it involved collateral review, not direct review as in *Boykin,* and stated, "To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke,* 506 U.S. at 29, 113 S.Ct. 517. The *Parke* Court further noted that the case before it was not a case where an extant transcript was suspiciously silent, but rather a case where no transcript or other records existed at all:

> "The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old. But *Boykin* colloquies have been required for nearly a quarter century. On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." *Id.* at 30, 113 S.Ct. 517.

The Court further noted that the presumption of regularity that attaches to final

judgments makes it appropriate to assign the burden of proof to the defendant. *Id.* at 31, 113 S.Ct. 517. As observed by the *Parke* Court, "If raising a *Boykin* claim and pointing to a missing record suffices to place the entire burden of proof on the government, the prosecution will not infrequently be forced to expend considerable effort and expense attempting to reconstruct records from farflung [sic] States where procedures are unfamiliar and memories unreliable." *Id.* at 32, 113 S.Ct. 517.

Hall argues that *Parke* may be distinguished from the present case in that he, unlike the respondent in *Parke*, is not attacking a prior conviction in a recidivist proceeding but is instead challenging his guilty plea by the only means available to him—a petition for post-conviction relief. *See Tumulty v. State*, 666 N.E.2d 394 (Ind. 1996) (holding that defendant who pleads guilty may not challenge the validity of a plea upon direct appeal but must instead avail himself of post-conviction procedures). We acknowledge that Hall's case is not identical to that present in *Parke*.[6] The Court in *Parke* stated that the attack in that case was "collateral" in that the respondent sought to deprive his prior convictions of their normal force and effect "in a proceeding that had an independent purpose other than to overturn the prior judgments." 506 U.S. at 30, 113 S.Ct. 517 (citing Black's Law Dictionary 261 (6th ed.1990)).

■ It has often been stated that post-conviction procedures are "collateral" attacks. *See e.g., Matheney v. State*, 688 N.E.2d 883, 890 (Ind.1997) (stating that post-conviction rules create a narrow remedy for subsequent collateral challenges to convictions), *cert. denied*, 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999). However, we conclude that post-conviction procedures are not collateral in the sense used in *Parke*; a post-conviction proceeding has no independent purpose other than to overturn the prior conviction. *Cf. Parke*, 506 U.S. at 30, 113 S.Ct. 517. This is especially so when post-conviction procedures are the sole avenue for appellate review. Therefore, we are not confident that *Parke* has affected the holdings of *Corder* and *Wilburn*. Moreover, our Supreme Court cited to both of these cases in *Curry*, a case decided after *Parke*, without any indication that either *Corder* or *Wilburn* were no longer valid precedent and without applying the burden-shifting rule of *Parke*.

The dissent concludes that *Parke* should apply to post-conviction challenges to guilty pleas where the defendant has served his sentence. *See infra*, op. at 114. In such a case, the dissent reasons, the defendant necessarily must have an "independent purpose" in filing his petition other than overturning the prior conviction. *See id.* We believe the dissent misreads the *Parke* decision. In discussing the collateral nature of the defendant's claim in *Parke*, the Court referred to the purpose of the *proceeding*, not the subjective motivation held by the defendant for initiating the proceedings. *See* 506 U.S. at 30, 113 S.Ct. 517. The law, not the subjective intent of the petitioner, dictates the purpose of the proceeding, and the purpose of a petition for post-conviction relief is to overturn the judgment. It does not become a "collateral" proceeding simply because the petitioner may be seeking to avoid some collateral effects of the underlying conviction.[7]

---

**6.** The Kentucky recidivist procedure would appear to be more akin to our habitual offender statute.

Our research has revealed that the vast majority of cases which have cited the *Parke* decision involved situations very similar to those present in the *Parke* case, i.e. challenges to the validity of prior guilty pleas used to enhance a defendant's sentence in a recidivist proceeding or to enhance the class of the crime for being a recidivist. *See e.g., United States v. Gray,* 177 F.3d 86 (1st Cir.1999) (placing *Parke* burden upon defendant challenging validity of prior guilty pleas used to enhance sentence); *United States v. Gilbert,* 20 F.3d 94 (3rd Cir.1994) (applying *Parke* burden to defendant attacking validity of prior guilty plea used to support conviction for possession of a firearm while being a felon). Our research has also revealed a few cases in which the *Parke* burden was applied to defendants not in recidivist proceedings, but instead upon federal habeas corpus challenges to the guilty pleas. *See e.g., Quinones v. Matesanz,* 151 F.Supp.2d 140 (D.Mass.2001) (applying *Parke* burden to petitioner challenging validity of guilty plea where defendant had failed to directly appeal guilty plea in state court and where two state post-conviction motions were denied). We have discovered only two cases where the holding in *Parke* was discussed in situations similar to that now before us.

In *Commonwealth v. Lopez,* 426 Mass. 657, 690 N.E.2d 809 (1998), the court, following *Parke,* placed the burden upon the defendant to prove that his guilty pleas were constitutionally infirm. In that case, the defendant had pleaded guilty to various crimes in 1976, 1979, 1982, and 1985. In 1995, the defendant was convicted of a federal crime, and his prior guilty pleas were used to enhance his federal sentence. Instead of attacking the validity of his pleas in the federal court at the sentencing proceedings, defendant *Lopez* waited until after his sentence was enhanced in federal court to file four nearly identical post-conviction motions in Massachusetts courts seeking to withdraw his prior guilty pleas. Upon appeal from the denial of his motions, the *Lopez* court noted that the burden is ordinarily upon the Commonwealth to show that a challenged guilty plea was valid. *Id.* at 812. The court stated that:

> "[a] far different situation exists, however, when the defendant leaves his guilty pleas unchallenged for a lengthy period of time, so that the contemporaneous record of the plea is lost (by prop-

---

**7.** In concluding that the *Parke* decision controls in the case before us, Judge May's dissent necessarily concludes that the petition for post-conviction relief filed by Hall is a "collateral" attack upon the validity of his guilty plea. This conclusion is inaccurate in that a petition for post-conviction relief, especially in the context of an attack on the validity of a guilty plea, which cannot be directly appealed, is not a collateral attack but is instead a direct attack. It is direct rather than collateral in the context of Justice O'Connor's opinion in *Parke.*

This is so because Justice O'Connor was relying upon definitions of the respective terms as set forth in the Sixth Edition of Black's Law Dictionary. That Edition, since altered in subsequent editions, gives the following definitions of "direct attack" and "collateral attack":

> "A direct attack on a judgment or decree is an attempt, for sufficient cause, to have it annulled, reversed, vacated, corrected, declared void, or enjoined, in a proceeding instituted for that specific purpose, such as an appeal, writ of error, bill of review, or injunction to restrain its execution; distinguished from collateral attack, which is an attempt to impeach the validity or binding force of the judgment or decree as a side issue or in a proceeding instituted for some other purpose. A direct attack on a judicial proceeding is an attempt to void or correct it in some manner provided by law." *Id.* at 459 (citations omitted).

Hall's Petition for post-conviction relief was an attempt to void a judgment in a manner provided by law for that specific purpose. It was therefore a "direct" attack.

er destruction of the stenographer's notes or erasure of the tape recording pursuant to court rules), and means of reconstruction are made impractical or impossible due to the death or retirement of judges and court reporters, the unavailability of witnesses, the inherent weaknesses and failures of recollection, and other factors commonly associated with the passage of time. At this point, the absence of a record, and the inability effectively to reconstruct it, may be directly attributed to the defendant's delay and may be said to be the defendant's fault. In such a case, the defendant's attack on his pleas by means of a rule 30(b) [post-conviction] motion necessarily proceeds on a basis extrinsic to the unavailable contemporaneous record. . . .

Integral to this reasoning is the presumption of regularity and the important policy of finality. Rule 30(b) motions, like the motions in this case, filed after conviction and sentencing[,] are considered collateral attacks on the final decision." *Id.* at 812–13 (citations omitted)."

The court further noted that placing the burden of attacking the validity of a plea upon the defendant was "particularly applicable" when such challenge arises in the context of sentence enhancement. "A defendant's dilatoriness in not directly challenging his plea will often suggest that, when the plea was made, the defendant was satisfied with his arrangement; had been counseled as to its particulars, and could be lawfully deemed to have accepted what were the unforeseeable, but possible, consequences." *Id.* at 814. After discussing the holding in *Parke*, the court concluded that "a collateral challenge, like the defendant's, to a prior conviction by guilty plea . . . must be accompanied by sufficient credible and reliable evidence to rebut a presumption that the prior conviction was valid." *Id.* Once a defendant meets this burden, "then an evidentiary hearing may be warranted at which the burden will be on the Commonwealth to show that the defendant's plea proceedings were conducted in a way that protected his constitutional rights." *Id.*

The court in *Byrd v. Shaffer*, 271 Ga. 691, 523 S.E.2d 875 (1999), declined to apply the *Parke* burden to the defendant in a state habeas corpus challenge to the validity of his guilty plea. The defendant later [8] filed a state petition for habeas corpus, challenging the validity of his plea. The habeas court granted relief, and the state appealed. The majority of the *Byrd* court, without much discussion, affirmed the habeas court, citing Georgia precedent which established that the state bore the burden in a habeas proceeding of establishing that a guilty plea was knowingly, voluntarily, and intelligently made. *Id.* at 876 (citing *Bowers v. Moore*, 266 Ga. 893, 471 S.E.2d 869 (1996)). The court distinguished another case, *Nash v. State*, 271 Ga. 281, 519 S.E.2d 893 (1999), which followed *Parke* and placed the burden of challenging guilty pleas upon the defendant in recidivism cases where the state seeks to use a prior guilty plea to enhance punishment. *Byrd*, 523 S.E.2d at 876 (citing *Nash*, 519 S.E.2d at 893). In a concurring opinion, Justice Hunstein explained more fully that, unlike the situation where the defendant challenges the validity of a prior guilty plea in a recidivist proceeding:

"[t]he situation is different in a habeas corpus proceeding filed by a defendant who pled guilty to the challenged conviction. A habeas petitioner challenging the voluntariness of a guilty plea can

---

**8.** The opinion does not indicate how much time elapsed between the defendant's convictions and the filing of his habeas corpus petition.

raise the issue only if it has not already been previously defaulted, i.e., was not an issue which was raised or could have been raised in a direct appeal from the conviction. In those situations where no timely direct appeal was brought from a conviction on a guilty plea, this Court has recognized that habeas corpus represents the sole remedy for a criminal defendant who subsequently asserts that the plea was not knowingly and voluntarily entered based on any matter which requires reference to facts outside the record. In these situations, habeas petitioners stand in virtually the same position as defendants who directly appealed their guilty pleas. . . .

Thus, while habeas proceedings may be deemed 'collateral' to the direct appeal, these proceedings are not as 'collateral' as the sentence enhancement proceedings at issue in *Nash* and [*Parke*]. Indeed, the Louisiana Supreme Court in *State v. Shelton*, 621 So.2d 769 (La.1993), on which we heavily relied in *Nash*, explicitly declined to shift the burden of proof from the state in any post-conviction proceedings other than the sentence enhancement ('multiple offender') cases, leaving it to the state to prove the constitutionality of a guilty plea in a habeas corpus proceeding." *Byrd*, 523 S.E.2d at 876–77 (citations omitted).

Thus, in *Lopez*, the court followed *Parke* and placed the burden of challenging guilty pleas in a post-conviction setting upon the defendant, whereas in *Byrd*, the court distinguished the recidivist cases in which *Parke* had been followed from the post-conviction habeas corpus proceeding under review in that case.

Though neither of these cases is entirely on point with the question currently at issue before us, we agree more with the court in *Byrd*. In *Lopez*, it was clear that the defendant was challenging his guilty pleas because they enhanced his sentence in federal court, and it was therefore more apparent that the defendant's attack was more akin to the "collateral" attacks at issue in *Parke* and the cases following *Parke*, i.e. the attack on prior guilty pleas used to enhance a sentence on a later conviction.[9] The *Lopez* court indeed appears to have treated the challenge before it as a collateral attack on a prior conviction in the context of sentencing enhancement.[10] *See* 690 N.E.2d at 813–14.

In *Byrd*, there is some suggestion that the defendant in that case could not have brought such a challenge upon direct appeal. *See* 523 S.E.2d at 876 (Hunstein, J., concurring) (noting that the issue of the voluntariness of the plea could only be brought in habeas proceedings where it was not an issue which was or could have been raised in a direct appeal from the conviction).[11] As here, the habeas petition

9. Nevertheless, it would seem to us that the purpose of the proceedings was still a direct attack on the validity of the underlying judgment, not a collateral attack in the federal recidivist proceeding.

10. The *Lopez* court also suggested that, unlike in Indiana, a direct challenge to the validity of a guilty plea is available in Massachusetts. *See* 690 N.E.2d at 813–14 (referring to a defendant's dilatoriness in not directly challenging his plea). However, in *Commonwealth v. De La Zerda*, 416 Mass. 247, 619 N.E.2d 617, 619 (1993), the same court observed that although a motion for a new trial under Massachusetts Criminal Rule 30 could be treated as a collateral post-conviction attack, such a motion also "might be seen as a direct appeal, in that *such a motion provides the only avenue for appellate review of the validity of the guilty plea*." (emphasis supplied). The *Lopez* court failed to address how this affected their decision.

11. In Georgia, a direct appeal will lie from a judgment of conviction and sentence entered on a guilty plea only if the issue on appeal can be resolved by facts appearing in the record.

in *Byrd* was the *sole* remedy for a criminal defendant who later asserts that the plea was infirm. *See id.*

We find the reasoning of the court in *Byrd* to be more persuasive. Especially in situations where the sole avenue for relief is a post-conviction petition, such petition is not "collateral" in the sense used by the Court in *Parke*. It is instead a direct attack on the validity of the underlying conviction with no other independent purpose. *See Parke,* 506 U.S. at 30, 113 S.Ct. 517. Although our case is similar to the *Lopez* case in that the passage of time has caused memories to fade and records to be lost or destroyed, such concerns can be duly considered when the State pleads the affirmative defense of laches. *See Wilburn,* 499 N.E.2d at 1176 (finding the defendant's post-conviction claim of a *Boykin* violation to be barred by laches).

■ We therefore conclude that Hall was not required to prove that he was not advised of his *Boykin* rights. Instead, given precedent and the definition of "collateral" as used in *Parke,* we conclude that a post-conviction petitioner need establish only that the record or transcript of the petitioner's guilty plea hearings are unavailable and that reconstruction of the record via the Appellate Rules is impossible. Here, it is uncontested that the record of Hall's guilty plea hearing is not in existence. The State argues, and the post-conviction court found, that reconstruction of Hall's record was not impossible. We are unable to agree.

Hall established that all of the people present at the guilty plea hearing (per the State's stipulation) could not remember the details of the hearing. Although there is no indication that Hall was *not* advised

of his rights under *Boykin,* neither is there any indication that he was. The fact that Judge Hines might have customarily given such advisements does not establish that Hall was given the proper advisements in the present case. Not one witness could recall whether Hall was properly advised of his rights. We cannot infer from this absent record that the trial court properly advised Hall. *See Corder,* 516 N.E.2d at 72; *Wilburn,* 499 N.E.2d at 1175. We are therefore required to reverse the post-conviction court and remand with instructions to grant Hall's amended petition for post-conviction relief, resulting in vacation of Hall's guilty plea.

We are not unaware of the implications of our holding. The current state of the case law would almost seem to encourage a defendant who pleaded guilty to wait several years after his plea hearing in hope that the transcript thereof will be destroyed or misplaced and that the participants' memories will have faded. If so, he will be able to have his plea vacated and, if possible, be subject to a new trial. This, of course, could be avoided if the State pleaded and established the affirmative defense of laches-which for some reason was not done in the present case. We are also aware that Hall was sentenced in 1983 to a five-year suspended sentence with two years served on probation. It is therefore likely that the effect of our holding will be limited to some collateral result of Hall's guilty plea and felony conviction, such as a subsequent habitual offender determination.

The judgment of the post-conviction court is reversed and the cause is remanded with instructions to grant the petition for post-conviction relief, i.e. vacation of Hall's guilty plea.

*Coleman v. State,* 604 S.E.2d 157, 158 (Ga., Oct.12, 2004); *Smith v. State,* 266 Ga. 687,

470 S.E.2d 436, 437 (1996).

VAIDIK, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

I would affirm the denial of Hall's petition for post-conviction relief, and therefore I must respectfully dissent.

As the majority notes, Indiana law does not permit a defendant who pleads guilty to challenge his conviction on direct appeal. *See Tumulty v. State*, 666 N.E.2d 394 (Ind.1996). Rather, on direct appeal, such defendants may challenge only their sentences. To challenge the validity of their guilty pleas, defendants must petition for post-conviction relief. Accordingly, the procedural posture under which the State was given the burden of proof in *Boykin*, challenge of a guilty plea on direct appeal from a conviction, presumably never arises in Indiana.

However, neither does Indiana law permit collateral challenges to convictions within habitual offender proceedings. *Edwards v. State*, 479 N.E.2d 541, 547 (Ind. 1985). Rather, defendants must normally challenge the predicate convictions via direct appeals or post-conviction proceedings. *Id.* Predicate convictions may be challenged during habitual offender proceedings if the predicate conviction is "constitutionally invalid," but *Boykin* violations do not fall within that exception. *See id.* at 547–48.[12] Accordingly, the procedural posture in *Parke*, a collateral attack within an habitual offender proceeding, wherein the Supreme Court placed the burden of proof regarding *Boykin* advisements on the defendant, will not arise under Indiana law.

In essence, Indiana law provides only one method for challenging the validity of a guilty plea—a petition for post-conviction

---

12. As our supreme court explained:

> In Indiana the general rule is that the alleged invalidity of predicate felony convictions may not be challenged during habitual offender proceedings when the prior final judgments are regular on their face. The habitual offender hearing is not the proper forum to contest the validity of these prior convictions. The proper procedure to challenge this type of predicate conviction is for the accused to set aside the predicate conviction in a direct attack through appeal or post-conviction relief in the court of conviction. However the accused may challenge the predicate felony conviction in a habitual offender proceeding when the conviction is constitutionally invalid. The conviction is deemed to be constitutionally invalid only when the following criteria are satisfied:
> (1) The court records reflecting the proceedings which led to the prior conviction, on their face, must raise a presumption that the conviction is constitutionally infirm; and
> (2) The apparent constitutional infirmity must be of the type which undermines both the integrity and reliability of the determination of guilt. Where the conviction is based upon a guilty plea, the infirmity must

affect that part of the guilty plea which constitutes the admission of guilt.

*Edwards v. State,* 479 N.E.2d 541, 547 (Ind. 1985).

> The court applied this standard to a *Boykin* claim raised during a habitual offender proceeding: In this case, the record does not affirmatively show that appellant was advised of his privilege against self-incrimination or of his right to confront his accusers. This predicate felony conviction thus raises a presumption of constitutional infirmity in satisfaction of the first criterion. A defendant would satisfy the second criterion where it can be shown, for instance, that the defendant was not represented by counsel or knowingly and intelligently waived such representation at the time of the prior felony conviction. However, a *Boykin* violation affects only the waiver part of the guilty plea and does not undermine the integrity and reliability of the determination of guilt. Therefore, there is no denial of due process in relegating defendant to a direct attack to set aside the prior conviction. Furthermore, we see no serious erosive effect from our direct attack preference upon the rights safeguarded by *Boykin*.

*Id.* at 547–48.

relief. Who, then, should have the burden of proving whether a petitioner received his *Boykin* advisements? Should we consider a petition for post-conviction relief analogous to (1) a direct appeal wherein the State has the burden pursuant to *Boykin*, (2) a collateral attack wherein the petitioner has the burden pursuant to *Parke*, or (3) some combination thereof wherein the State sometimes has the burden and the petitioner sometimes has the burden?[13] If it is some combination thereof, can we create a rule for assignment of the burden that (1) could be consistently applied and (2) would comport with constitutional requirements for knowing and intelligent guilty pleas, while at the same time respecting the need for judgments to be final?[14]

The majority declines to follow *Parke* because Parke mounted his collateral attack against his guilty plea during recidivist proceedings, while Hall claims he simply filed a petition for post-conviction relief without having been charged as an habitual offender. Because post-conviction proceedings are the only route for challenging guilty pleas in Indiana, the majority believes Hall's petition does not fall into Justice O'Connor's category of collateral attacks having "independent purpose other than to overturn the prior judgment."[15] *See Parke*, 506 U.S. at 30, 113 S.Ct. 517. I disagree, and believe *Parke* controls.

I find it inconceivable that Hall filed his petition for post-conviction relief without an "independent purpose" other than to overturn the prior conviction, *id.*, because Hall is no longer suffering any direct consequences of his plea. He filed his petition for post-conviction relief eighteen and a half years after being given "a five-year suspended sentence with two years on probation." *Op.* at 103. Any complaint he has now is undoubtedly based on his desire to avoid some indirect negative consequence—be that an habitual offender proceeding, difficulty getting a job because of his criminal record, or inability to vote. As I see it, any of those reasons is an "independent purpose" sufficient to remove Hall from that special category of persons entitled to the lesser burden of proof provided by *Parke*. *See, e.g., Mas-*

---

13. We routinely refer to post-conviction proceedings as "collateral attacks" on a judgment, *see, e.g.,* majority op. at 105, and Indiana law imposes on post-conviction petitioners the burden of proving their grounds for relief by a preponderance of the evidence. *See* Post–Conviction Rule 1 § 5. However, our supreme court has used the phrase "direct attack" when discussing a petition for post-conviction relief filed to challenge the validity of a guilty plea. *See, e.g., Edwards,* 479 N.E.2d at 547, 548.

14. While the specific issue we struggle with today is new, the task we face is not new to courts in modern democracies. We are again faced with a need to balance two competing values: "(1) the need to vindicate federal and state rights by correcting errors, and (2) the need to bring proceedings to a rest, especially where the passage of time reduces the possibility that a new trial will be reliable." *White v. State,* 497 N.E.2d 893, 895–96 (Ind.1986).

15. The majority provides one other reason for declining to follow *Parke:* "our [s]upreme [c]ourt cited to both [*Wilburn* and *Corder* ] in *Curry* [*v. State,* 674 N.E.2d 160 (Ind.1996) ], a case decided after *Parke,* without any indication that either *Corder* or *Wilburn* were no longer valid precedent." *Op.* at 108. However, the issue in *Curry* was whether the post-conviction petitioner had made an adequate attempt to reconstruct the record of his guilty plea hearing. The supreme court affirmed the denial of his petition for post-conviction relief because Curry had not demonstrated reconstruction of his plea hearing was impossible. *Curry,* 674 N.E.2d at 164. As the issue before the court in *Curry* did not require discussion of *Parke's* limitation of *Boykin* and as the supreme court did not even acknowledge *Parke,* I would not interpret *Curry's* citation to *Corder* and *Wilburn* to establish the validity of those cases after *Parke.*

*sachusetts v. Lopez*, 426 Mass. 657, 690 N.E.2d 809, 814 (1998) (following *Parke* to apply *Boykin* burden on post-conviction petitioner who filed his state petition for post-conviction relief to challenge old guilty pleas that had recently been used to enhance a federal sentence).

"Routine reversal of convictions on technical grounds imposes substantial costs on society." *White v. State*, 497 N.E.2d 893, 905 (Ind.1986). Those costs include the time and resources of jurors, witnesses, judges, lawyers, and prosecutors, and the stress on victims who must re-live painful experiences during trial testimony. *Id.* If time has passed, witnesses may have moved away or may have forgotten important details of the crime, making re-trial by the State impossible. *Id.* If guilty individuals routinely avoid punishment, society's view of the justice system will become jaded and we will be unable to deter or rehabilitate criminals. *Id.* Reversal of Hall's conviction on technical grounds at

this late date comes at too high a cost to be justified simply by the absence of a transcript of his guilty plea hearing.[16]

For all these reasons, I respectfully dissent.

---

16. My opinion today should not be interpreted to indicate every post-conviction petitioner whose record is missing should have the burden of proof pursuant to *Parke*. Nor do I express an opinion on where the line should be drawn to shift the burden from the State to post-conviction petitioners. I simply would hold, based on the facts in this case, that Hall is not in the category of persons entitled to the benefit of the presumption created by *Boykin*.

Nevertheless, I note all post-conviction petitioners already have the burden of production when they allege their guilty pleas were not knowing or intelligent because a trial court failed to give the other non-*Boykin* advisements required by statute. *White v. State*, 497 N.E.2d 893, 905 (Ind.1986) (holding a post-conviction petitioner has a burden to prove not only that the trial judge failed to give an advisement required by statute but also that the judge's failure "rendered his decision involuntary or unintelligent"). The reason our supreme court shifted that burden to petitioners is because placing the burden on the State exposed our post-conviction relief procedures to incredible abuse. It has created a

virtual tidal wave of petitions by prisoners, some of whom have slumbered on their rights for five or ten years. It has, by definition, afforded relief only to prisoners who have asserted their guilt before the trial judge and never recanted. It has visited felony convictions with all the finality of default judgments in small claims court. *Id.* at 900. Those same concerns weigh in favor of holding *Parke* applies to at least some, if not all, post-conviction petitions. *See also Redington v. State*, 678 N.E.2d 114 (Ind. Ct.App.1997), *reh'g denied*.

In addition, one statement by Justice O'Connor in *Parke* leads me to believe the Supreme Court might, if given the opportunity, further narrow the holding in *Boykin*, such that it would apply *only when a record exists that is silent*: "We are therefore unprepared to say that when the government carries the ultimate burden of persuasion and no transcript of the prior proceeding exists, the Due Process Clause requires the Commonwealth to prove the validity of the conviction by clear and convincing extrarecord evidence." *Parke*, 506 U.S. at 35, 113 S.Ct. 517.