**Willie SIMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 879S229.**

Supreme Court of Indiana.

Dec. 2, 1980.

James L. Wieser, Highland, for appellant.

Theo. L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Willie Sims, was charged along with Paul Smith and Albert Larkin by way of an information with two counts of kidnapping, Ind.Code § 35–42–3–2, and two counts of robbery, Ind.Code § 35–42–5–1. Appellant was granted a severance and tried separately by jury. He was convicted on all four counts.

In this case Pioch and Mann were steered to appellant's apartment by a man on the street for the purpose of finding some girls and having a good time. There, appellant struck Pioch on the head with a ball bat, and put a knife to his neck, and Larkin

mistreated Mann in a like manner. Their money was taken. This occurred at about midnight on February 1, 1978, in Gary, Indiana.

Mann was then tied up with a cord and kept at the apartment while appellant and Smith drove Pioch to his apartment to get more money. Pioch escaped from them at about 4:30 a. m., and procured the assistance of the police. Pioch and the police then went to appellant's apartment building where they effectuated the rescue of Mann. Appellant was arrested on a landing in the apartment building and his two accomplices were also arrested in the building. Pioch pointed out appellant as his attacker on the scene at the time of arrest, two days later through a photographic display at the police department, and at trial. Mann identified appellant as one of the attackers at the trial.

Appellant presents two issues on appeal which we deem necessary to address, namely, (1) whether the in–court testimony of Pioch serving to identify appellant was correctly admitted, and (2) whether it was error to admit certain items taken from his apartment pursuant to his consent to search.

### I.

Appellant made a motion to suppress any in–court identification by the victim Pioch on due process grounds. Prior to trial Pioch had twice identified appellant to the police as his assailant. He contends that these occurrences stemmed from confrontations which were staged by the police in a manner which was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny him due process of law. *Stovall v. Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Dillard v. State*, (1971) 257 Ind. 282, 274 N.E.2d 387.

■ The first such identification occurred at appellant's apartment building at about 6:00 a. m., when Pioch returned with the police to aid Mann. The police observed appellant hiding on a landing of the stairs and ordered him out. The police then took him in custody and then at the request of the officers Pioch identified appellant as one of the assailants. Appellant observes that at the time the officers had their guns drawn and were in uniform and concludes that the circumstances were such as to force the positive identification. Confrontations such as this occurring at the scene shortly after a crime were first considered by this Court in *McPhearson v. State*, (1969) 253 Ind. 254, 253 N.E.2d 226. There McPhearson was arrested minutes after a gas station robbery and taken back to the station where he was identified by the attendant. The Court concluded that the procedure was not unduly suggestive. The procedure at appellant's apartment was no different than that approved in *McPhearson*.

■ The second identification made by Pioch occurred several days after the offense when he was handed about twelve photographs of black male persons and selected a photograph of appellant from them. The law regards the photographic display as well as the live lineup to be an identification procedure which can be employed in a manner which can be so impermissibly suggestive as to violate the right to due process of law and require suppression. *Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Sawyer v. State*, (1975) 260 Ind. 597, 298 N.E.2d 440. Appellant observes that Pioch was white, while appellant and all those portrayed in the photographs were black. The only other evidence descriptive of the persons portrayed in the photographs was that some were light complected and others were darker. Pioch himself was unable to recall other characteristics which may have varied among the photographs. From the totality of the circumstances the photographic identification procedure was not unduly or unnecessarily suggestive and could not have given rise to a substantial likelihood of the misidentification of appellant. On the basis of these two pre–trial identification procedures it was not error to admit the in–court identification of appellant by Pioch at trial.

## II.

Appellant by a motion to suppress and later in-trial objections challenged the admissibility of three baseball bats, an electric wire cord, a knife, and a rag seized by the police in a search of his basement apartment at 568 Adams Street. After having been arrested and taken in custody to the police station, appellant signed a written consent to the police to search his apartment. The challenge to admissibility was premised however, upon the claim that the State had failed to show an explicit waiver by appellant of his right to confer with counsel about whether he should consent to the search, as required by law. *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634; *Larkin v. State*, (1979) — Ind. —, 393 N.E.2d 180. The challenge was turned down by the trial court in both instances when made, and the items identified as having been used to beat and to confine the two victims were admitted at trial and displayed to the jury.

At the hearings upon the challenges the evidence was all in harmony. Appellant was arrested outside his apartment at 6:00 a. m., and taken in custody to the police station. There at about 10:00 a. m., he was advised of his constitutional rights prior to being interrogated, as required by *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, signed a written waiver form, and made a statement in which he claimed innocence. He was then asked to consent to a search of his apartment, and signed a written form authorizing the search. The form signed was the following:

"FORM FOR CONSENT TO SEARCH

      2/1/78
      Date

 568 Adams
      Location

I, __Willie Sims /s/__ , having been informed of my constitutional rights not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorized the GARY POLICE DEPARTMENT, by Officers: _____

to conduct a complete search of my premises located at ___568 Adams Basement___.
These (Officers or agents) are authorized by me to take from my premises any letters, papers, materials or other property which they may desire.

This written permission is being given by me to the above named person voluntarily and without threats or promises of any kind.

                Willie Sims /s/
                Signature

Witnesses:      Willie Fullilone /s/

         _____  "

The situation here is that there was no evidence that the police informed appellant that he had the right to confer with a lawyer prior to giving consent to search his home, and he did nothing to indicate his appreciation of such right. The place identified in the form was appellant's basement apartment. The police then went there, entered, and took the challenged items. There was no coercion or undue influence exercised by the police in obtaining this consent.

In resolving the issue presented, we do not engage in defining a new frontier of the law. Three years prior to the use by the police of this consent form we held in *Pirtle v. State, supra* :

"[A] person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent. This right, of course, may be waived, but *the burden will be upon the State to show that such waiver was explicit,* and as in *Miranda*, the State will be required to show that the waiver was not occasioned by the defendant's lack of funds." (Emphasis added.) 263 Ind. at 29, 323 N.E.2d 634.

In *Larkin v. State, supra*, an appeal by appellant's accomplice, following a separate trial on these same charges, we expressly reaffirmed the *Pirtle* requirement. However, there the challenge to the consent to search was different in that it was based upon the claim that Sims's consent to search had not been freely and voluntarily given, that is, that it had not been shown to

be the product of the exercise of a free and unfettered will. Here the claim is different. It challenges the sufficiency of the showing by the State of an explicit waiver of the right to counsel. It is the explicitness or knowing quality of that waiver which is at stake here, and not the voluntary quality of the decision to permit the search.

The trial court in denying the motion to suppress fully appreciated the requirement that the burden was upon the prosecution to demonstrate an explicit waiver of the right to counsel to give advice on the consent. However, he took the position that an earlier advisement of the right to counsel and waiver of that right occurring pursuant to the *Miranda* case satisfied the explicit waiver requirement of the *Pirtle* case. The State takes the same position on appeal. The reasoning applied cannot be sustained.

There is no ambiguity in the *Pirtle* opinion. There are two independent parts to it. In the first, the items seized by the police pursuant to the consent to search were deemed inadmissible because the consent was invalid. The consent was invalid because it was the tainted product of custodial interrogation which had been pressed beyond the limits permitted by the *Miranda* holding. In the second, we recognized the right of those in custody to have the advice of counsel at the point where a consent to search is requested, and expressly and clearly imposed upon the State the burden in court of demonstrating an explicit waiver of such right as a condition to introducing the fruits of such searches.

A *Miranda* waiver is tied to the interrogation process of the police. An advisement pursuant to that case informs the suspect about to be interrogated that he has the right to confer with counsel before answering questions and to have counsel with him during questioning. Thus, no inference would arise in the mind of the person about to be questioned from the administration of the *Miranda* advisement, that there is a right to confer with counsel in deciding whether to consent to a search of one's

dwelling. The court was in error in finding an explicit waiver on this basis, and appellant was entitled to the exclusion of the items seized pursuant to his consent.

Some uncertainty in this area of the law may stem from the fact that three years prior to our decision in *Pirtle*, the United States Supreme Court rejected the proposition that the state, in justifying a search upon consent, should do more than simply demonstrate that the consent was voluntary. *Schneckloth v. Bustamonte*, (1973) 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. In *Pirtle* for the first time, we specifically placed the burden upon the state to show an explicit waiver of the right to counsel as a condition of showing the validity of a consent to search. There is, however, no legal inconsistency between the two cases. First, the holding in *Schneckloth* is as follows:

"Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." 412 U.S. at 248–249, 93 S.Ct. at 2059.

The *Schneckloth* test is applicable only where the consenting person is not in custody; In *Pirtle*, and in the case before us, the consenting person is under arrest and in the custody of the police. The presence of custodial conditions was one of the major reasons for our decision in *Pirtle* to require the police to get an explicit waiver of the right to counsel. Furthermore, our decision in *Pirtle* is based upon the long recognized right of an accused in this state to have counsel at all critical stages following the

point of arrest. *Suter v. State*, (1949) 227 Ind. 648, 88 N.E.2d 386; *Dearing v. State*, (1950) 229 Ind. 131, 95 N.E.2d 832; Art. I, § 13, Indiana Constitution. As can be seen, it is not based solely upon the Fourth, Sixth and Fourteenth Amendments to the United States Constitution as was *Schneckloth*. Under Indiana law, to confer a right by law, is also to confer everything necessary for its protection, although no specific mention of added measures is made. *Batchelor v. State*, (1920) 189 Ind. 69, 125 N.E. 773.

We find it unnecessary to deal with the other issues raised in this appeal as there is little likelihood that they will reoccur upon a new trial. The conviction is reversed.

HUNTER and PRENTICE, JJ., concur.

PIVARNIK, dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I dissent from the majority opinion here in that I feel defendant Sims did knowingly and voluntarily waive his rights in giving the consent to search to the police.

This is a companion case to *Albert Larkin v. State of Indiana*, (1979) —— Ind. ——, 393 N.E.2d 180, where we unanimously affirmed Larkin's conviction and found that the very same search was proper and that Sims, in giving his consent to the police, had waived any rights he had. Larkin had attempted, in his case, to have the evidence suppressed, based on the fact that Sims' consent to search was not valid. We said therein: "In light of these circumstances, we hold that Sims' consent to search was valid and therefore appellant cannot have the evidence obtained through the search suppressed on that basis."

The majority here would be in direct conflict with that case. I think we were correct in *Larkin* and I would vote to affirm the trial court here.

GIVAN, C. J., concurs.