**Edward JACKSON, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 43A03–0410–PC–472.

Court of Appeals of Indiana.

April 27, 2005.

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Edward Lee Jackson appeals the denial of his petition for post-conviction relief. We affirm.

### Issue

We restate the sole issue before us as whether the post-conviction court properly rejected Jackson's claim that he was not advised of his constitutional rights during a guilty plea hearing conducted in 1979.

### Facts

In 1979, the State charged Jackson with one count of Class B felony child molesting and one count of Class C felony child molesting. Later that same year, Jackson agreed to plead guilty to one count of Class D felony child molesting. The trial court sentenced him to two years of incarceration, both suspended, and one year of probation.

In July 2003, Jackson filed a pro se petition for post-conviction relief challeng-

ing his 1979 guilty plea and conviction, which subsequently was amended by counsel. The amended petition alleged that there was not a sufficient record of the 1979 guilty plea hearing to demonstrate that Jackson was advised of his *Boykin* rights before pleading guilty. The State filed an answer in which, among other things, it asserted the affirmative defense of laches. It later withdrew that defense.

At the hearing on Jackson's petition, evidence was presented that the tape recording of the 1979 guilty plea hearing could not be located, although the recording of the subsequent sentencing hearing was found. Jackson also testified that he could not remember the guilty plea hearing. Additionally, the 1979 trial judge, prosecutor, and defense attorney all testified or presented affidavits that they could not specifically remember Jackson's guilty plea hearing. The trial judge and defense attorney, however, did testify to the effect that as a matter of practice defendants who pled guilty in that trial court were adequately advised of their rights. Furthermore, the court reporter present at the 1979 guilty plea hearing had made shorthand notes stating, "constitutional rights—no question about rights." Tr. p. 14. The chronological case summary also states, "having been advised of his Constitutional rights [Jackson] does now tender plea of guilty to the offense of child molesting...." App. p. 2.

On September 8, 2004, the post-conviction court denied Jackson's petition. It concluded that reconstruction of the record of Jackson's 1979 guilty plea hearing was possible and that Jackson had failed to establish he was not advised of his *Boykin* rights at that time. Jackson now appeals.

## Analysis

Jackson asserts he definitively established that the official record of his guilty plea hearing was lost and that reconstruc-

tion of the record was impossible because no one present could remember details of that hearing. Jackson presents a tenable argument that he was entitled to post-conviction relief in view of the line of cases that had suggested it was proper to vacate a guilty plea if there is no recording or transcript of the guilty plea hearing and everyone present at the hearing is deceased or unable to remember details of the particular proceeding. *See Corder v. State,* 516 N.E.2d 71, 72 (Ind.Ct.App.1987). Because of a recent case from our supreme court disapproving of this approach, and a case from the United States Supreme Court that approved of an approach placing a higher burden on defendants seeking to vacate guilty pleas on collateral review, we determine that Jackson is not entitled to post-conviction relief.

We first consider *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin,* a defendant pled guilty to five counts of robbery. Pursuant to Alabama law, a jury subsequently sentenced him to death. On direct appeal from the sentencing decision, the Supreme Court observed that the record failed to reveal that the defendant either was advised of or waived the following three rights when he pled guilty: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Id.* at 243, 89 S.Ct. at 1712. The Supreme Court reversed the convictions and imposition of the death penalty, concluding: "We cannot presume a waiver of these three important federal rights from a silent record." *Id.*

In subsequent years, Indiana courts addressed the *Boykin* holding in situations where the official record of a guilty plea hearing had been misplaced or destroyed. In *Zimmerman v. State,* 436 N.E.2d 1087 (Ind.1982), our supreme court discussed the consequences of a trial court's having

lost the tape recording of a defendant's guilty plea hearing. Although not specifically mentioning *Boykin* and the three federal rights that must be knowingly waived by any defendant pleading guilty, our supreme court rejected the argument "that a lost record was per se the equivalent of a silent record." *Id.* at 1089. Rather, if no transcript of the hearing can be produced, our supreme court held the defendant must attempt to reconstruct the record by following the provisions of the predecessor to current Indiana Appellate Rule 31, which was Appellate Rule 7.2(A)(3)(c). *Id.* at 1088–89. The court held that Rule 7.2(A)(3)(c) "abrogated the old practice of ordering a new trial when the transcript of the evidence was unavailable." *Id.* The court, however, noted that an exception to this rule "arises when reconstruction of the record is not possible." *Id.* at 1089.

Following *Zimmerman*, it was understood that if a defendant provided sufficient evidence that it was impossible to reconstruct the lost record of a guilty plea hearing, then vacation of the conviction entered pursuant to the plea was required. *See Ray v. State*, 496 N.E.2d 93, 99 (Ind. Ct.App.1986), *trans. denied; Corder*, 516 N.E.2d at 72; *Patton v. State*, 537 N.E.2d 513, 515 (Ind.Ct.App.1989). Sometimes, convictions would be upheld despite the loss of a record and the impossibility of reconstructing it if the State sufficiently established the affirmative defense of laches. *See Wilburn v. State*, 499 N.E.2d 1173, 1175–78 (Ind.Ct.App.1986), *trans. denied.* Our supreme court cited and discussed *Zimmerman* in 1996, at which time it said "when a defendant seeks post-conviction relief alleging his guilty plea was not voluntarily made, the loss of a record will require the vacation of the plea and a new trial only when reconstruction of the record through Appellate Rule 7.2 is impossible." *Curry v. State*, 674 N.E.2d 160, 162 (Ind.1996). *Curry* specifically held that

the defendant did not meet his burden of proving that reconstruction of his guilty plea hearing was impossible because he "did not establish that all of the persons present at the guilty plea hearing had died or could not remember details of the proceedings." *Id.* at 163. *Curry* in no way indicated that *Zimmerman* was overruled or no longer valid precedent; in fact, *Curry* seemed to leave open the possibility that a defendant could be entitled to post-conviction relief from a guilty plea conviction if the record was lost, the defendant established that no one present at the guilty plea hearing was still alive or could remember the specifics of the defendant's hearing, and the State could not prove laches.

We are now informed that *Zimmerman* is no longer valid precedent and has not been since 1986. The author of this opinion also authored *Graves v. State*, 784 N.E.2d 959 (Ind.Ct.App.2003). Our supreme court granted transfer in that case and recently issued its opinion, in which it essentially asserted that we improperly relied upon *Zimmerman* as good law because it was overruled by *White v. State*, 497 N.E.2d 893 (Ind.1986). *Graves v. State*, 823 N.E.2d 1193, 1194 (Ind., 2005). We are compelled to note that *White* makes no mention of *Zimmerman* throughout the entire opinion. What *White* plainly did overrule was *German v. State*, 428 N.E.2d 234 (Ind.1981). That case concerned the extent of non-*Boykin* advisements a trial judge must give to a defendant who is pleading guilty and the effect of a failure to give such advisements when the plea is challenged in a post-conviction proceeding—automatic vacation of the guilty plea. *German*, 428 N.E.2d at 236–37. *German* did not address the reconstruction of guilty plea hearing records and the effect of being unable to recon-

struct a record.[1]

We are aware *White* holds that a post-conviction petitioner ·seeking relief from a guilty plea-based conviction "needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntary or unintelligent." 497 N.E.2d at 905. The very next sentence, however, states, "Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated." *Id.* It does not appear that *White's* holding was intended to apply to *Boykin* rights.

Our supreme court also states in footnote three of *Graves* that *Zimmerman* was implicitly overruled by *State v. Scales*, 593 N.E.2d 181 (Ind.1992). The express holding of *Scales* was to reject the State's argument that Indiana Criminal Rule 10, which requires trial courts to maintain misdemeanor guilty plea records for ten years, created an absolute ten-year statute of limitations for filing post-conviction challenges to a misdemeanor conviction. *Id.* at 184–85. With respect to "implicit" overrulings generally, it is respectfully observed that they are not reflected in Westlaw or Lexis citation services. Absent some sort of direct language disapproving of an earlier case, the nuanced nature of an "implicit" overruling makes it difficult to discern the current state of the law.

We also observe that in 1996, our supreme court cited *Zimmerman* with approval and indicated that it was still valid precedent; in fact, it was cited as controlling authority. *Curry,* 674 N.E.2d at 162–63. Given our supreme court's latest word on *Zimmerman, Curry* is no longer valid precedent, at least to the extent it suggests that the impossibility of recreating a lost guilty plea hearing record requires vacation of the conviction entered pursuant to that plea. We are now writing on a blank slate on this issue. In other words, while *Zimmerman* and its progeny seemed to create a clear rule as to what must happen if the record of a guilty plea hearing is lost and cannot be reconstructed, that rule no longer exists. There is no clear precedent from our supreme court directly on point with respect to *Boykin* rights, post-conviction challenges to guilty pleas, and the loss of a guilty plea hearing record. We turn to examine *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

*Parke* analyzed Kentucky's approach to collateral challenges to guilty plea-based convictions in situations where the record of the guilty plea hearing was lost. The defendant in *Parke* was charged in 1986 with robbery and was alleged to be an habitual offender because of two burglary guilty pleas entered in 1981 and 1979. *Id.* at 23, 113 S.Ct. at 520. The defendant had never challenged these convictions until the prosecution initiated the 1986 habitual offender proceedings, but claimed the guilty pleas were invalid under *Boykin* because no transcripts of the 1981 and 1979 proceedings existed and it could not be shown that the pleas were knowing and voluntary. *Id.* The trial court rejected the defendant's challenge to the validity of the 1979 and 1981 convictions, and the Kentucky Court of Appeals affirmed. The

---

**1.** The *White* court stated that in deciding whether a plea was made voluntarily and intelligently, courts must review all of the evidence, including "the transcript of the petitioner's original sentencing...." 497 N.E.2d at 905. *Zimmerman* specifically addressed what to do if there is no such transcript.

Kentucky courts relied upon a procedure whereby the prosecution in an habitual offender proceeding was only required to prove the fact of a previous conviction beyond a reasonable doubt; it did not have to prove that the conviction was validly obtained. *Id.* at 23, 113 S.Ct. at 520. Once the prosecution proved the existence of the judgment, a presumption of regularity attached and the burden shifted to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. *Id.* at 24, 113 S.Ct. at 520. If the defendant refuted the presumption of regularity, the burden shifted back to the prosecution to show affirmatively that the underlying judgment was entered in a matter that protected the defendant's constitutional rights. *Id.* On habeas corpus review, the Sixth Circuit reversed, holding that when no transcript of a prior guilty plea proceeding exists, the prosecution has the entire burden of establishing the plea's validity and no presumption of regularity can attach to a final judgment. *Id.* at 25, 113 S.Ct. at 521.

■ The Supreme Court rejected the Sixth Circuit's logic and agreed with the Kentucky Court of Appeals. In fact, the Supreme Court stated: "In our view, Kentucky's burden-shifting rule easily passes constitutional muster." *Id.* at 28, 113 S.Ct. at 522. The Supreme Court held that *Boykin* was inapplicable in this case because "*Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding." *Id.* at 29, 113 S.Ct. at 523. The Supreme Court also stated that it was clear "that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Id.* at 31, 113 S.Ct. at 524. Finally, the Supreme Court made the following strongly worded observations regarding long-delayed challenges to guilty pleas:

> There is no good reason to suspend the presumption of regularity here. This is not a case in which an extant transcript is suspiciously "silent" on the question whether the defendant waived constitutional rights. Evidently, no transcripts or other records of the earlier plea colloquies exist at all. . . . The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old. But *Boykin* colloquies have been required for nearly a quarter century. On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

*Id.* at 30, 113 S.Ct. at 523–24. After *Parke*, it is clear that if a challenge to a guilty plea can be characterized as a "collateral" attack, then it is appropriate to place the burden of producing evidence of a constitutional violation on the defendant. If the challenge is a "direct" attack, then *Boykin* applies.

This court addressed *Parke* late last year in *Hall v. State*, 819 N.E.2d 102 (Ind. Ct.App.2004). The majority of the *Hall* panel declined to apply a *Parke*-like burden-shifting rule to a situation in which a defendant waited until 2001 to challenge a guilty plea entered into in 1983, and no

transcript of the guilty plea hearing existed and no other documents indicated that the defendant was advised of his *Boykin* rights. *See id.* at 112. Additionally, because none of the parties present could remember details of the defendant's specific guilty plea hearing, the majority held that reconstruction of the record was impossible and vacation of the 1983 conviction was required. *Id.* This was so even though, as here, there was evidence presented that the trial judge as a matter of custom always advised defendants of their *Boykin* rights before accepting a guilty plea. *Id.*

The majority in *Hall* declined to follow the Kentucky rule approved of in *Parke* because in Indiana, post-conviction relief is the only way a defendant can challenge the validity of a guilty plea; the majority concluded, "such petition is not 'collateral' in the sense used by the Court in *Parke*. It is instead a direct attack on the validity of the underlying conviction with no other independent purpose." *Id.* The majority adhered to what it believed to be the valid *Zimmerman*-based rule, i.e. "a post-conviction petitioner need establish only that the record or transcript of the petitioner's guilty plea hearings are unavailable and that reconstruction of the record via the Appellate Rules is impossible." *Id.* The majority also noted the difference between *Parke* and the case before it, namely that the defendant in *Parke* was challenging his prior convictions within the context of a recidivist sentence enhancement proceeding while Hall had filed a purportedly freestanding post-conviction relief petition. *Id.* at 108.

Judge May, a member of the current panel, dissented in *Hall* and advocated for the burden-shifting rule analyzed in *Parke*. With respect to the difference in procedural posture between *Parke* and *Hall,* she observed that defendants in Indiana cannot raise a *Boykin* challenge to a previous conviction directly during habitual offender proceedings, and so the *Parke* situation can never arise precisely in Indiana. *Id.* at 113 (May, J., dissenting) (citing *Edwards v. State,* 479 N.E.2d 541, 547–48 (Ind.1985)). She went on to state:

> I find it inconceivable that Hall filed his petition for post-conviction relief without an "independent purpose" other than to overturn the prior conviction, because Hall is no longer suffering any direct consequences of his plea. He filed his petition for post-conviction relief eighteen and a half years after being given "a five-year suspended sentence with two years on probation." Any complaint he has now is undoubtedly based on his desire to avoid some indirect negative consequence—be that an habitual offender proceeding, difficulty getting a job because of his criminal record, or inability to vote.

*Id.* at 114 (internal citations omitted). Our supreme court recently granted transfer in *Hall.* This does not necessarily mean that it disagrees with the *Hall* majority. Nevertheless, two of the panel members in this case believe that the dissenting opinion in *Hall* embodies the correct view.

The position of the *Hall* majority essentially is that because a post-conviction relief proceeding is the only way in which a defendant in Indiana may challenge the validity of a guilty plea, such an attack is always "direct" for *Boykin* purposes and never "collateral" for *Parke* purposes. Thus, *Boykin* and its "direct" appeal requirement that the record must affirmatively show the waiver of the right to jury trial, right to confront witnesses, and the privilege against self-incrimination, would always apply. The *Hall* majority placed much emphasis on the definition of "collateral attack" provided in *Parke*, which is an effort to deprive previous convictions of

their normal force and effect in a proceeding that has an independent purpose other than to overturn the prior judgments. *Hall,* 819 N.E.2d at 108 (citing *Parke,* 506 U.S. at 30, 113 S.Ct. at 523).[2] The only purpose of a post-conviction challenge to a guilty plea, the *Hall* majority asserted, is to overturn the prior judgment.

 We agree that in one sense, especially with respect to guilty pleas, post-conviction relief petitions allow a "direct attack" on a conviction because the only facial purpose of such a petition is to set aside a prior judgment. On the other hand, it is axiomatic that a post-conviction relief proceeding is a quasi-civil one that is completely separate and distinct from the underlying criminal proceeding. *See Phillips v. State,* 441 N.E.2d 201, 203 (Ind. 1982). Also, the courts of this State have repeatedly labeled post-conviction proceedings as "collateral" in nature. *See, e.g., Lambert v. State,* 743 N.E.2d 719, 725 (Ind.2001). It thus appears to us that a post-conviction relief petition could be construed either as a "direct" or "collateral" attack on a conviction, depending on the circumstances. We think it is necessary to focus narrowly on whether Jackson's post-conviction petition may be construed as a "collateral" attack strictly for purposes of *Parke's* burden-shifting rule, based on the particular facts and circumstances of his case, regardless of whether the petition might be a "direct" attack for other purposes. After reading *Parke* in its entirety, we conclude the Supreme Court readily would approve of placing the burden of producing evidence of a *Boykin* violation on a defendant such as Jackson because he effectively launched a "collateral" attack on his 1979 guilty plea.

*Parke* clearly permits making it difficult for defendants who have pled guilty to challenge their plea many years later. It also disapproved of allowing defendants to avoid the consequences of their plea simply because the official record of their plea hearing has disappeared through no one's fault. In our view, *Parke* stands for the proposition that there is no constitutional right that decades-old tape recordings of guilty plea hearings never be lost, nor that trial judges and attorneys have perfect memories regarding long-ago proceedings. We see no indication that the Supreme Court intended to narrowly limit this proposition only to challenges to guilty pleas that arise within the official context of an habitual offender proceeding. Of course, *Parke* did not *mandate* that the states implement rules that place the burden of proving constitutional infirmity on defendants who challenge their guilty pleas in a collateral setting. It merely approved such rules. We conclude, however, that such a rule would be consistent with Indiana case law and our post-conviction rules.

We mentioned *White v. State* earlier in this opinion. There, our supreme court expressed great consternation with prisoners who had pled guilty being able to successfully challenge their guilty pleas many years after the fact. The court stated:

> Routine reversal of convictions on technical grounds imposes substantial costs on society. . . . Jurors, witnesses, judges, lawyers, and prosecutors may be required to commit further time and other resources to repeat a trial which has already taken place. The victims are caused to re-live frequently painful expe-

---

**2.** Our supreme court has similarly defined "collateral attack" as "an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judg- ment, although impeaching or overturning the judgment may be necessary to the success of the action." *Indiana Dep't of Envtl. Mgmt. v. Conard,* 614 N.E.2d 916, 922 (Ind.1993).

riences in open court. The erosion of memory and the dispersal of witnesses may well make a new trial difficult or even impossible. If the latter is the case, an admitted perpetrator will be rewarded with freedom from prosecution. Such results prejudice society's interest in the prompt administration of justice, reduce the deterrent value of any punishment, and hamper the rehabilitation of wrongdoers.

*White*, 497 N.E.2d at 905. This was the reason the *White* court held that merely demonstrating a trial court's failure to give all of the advisements required by Indiana Code Section 35–35–1–2(a) is not enough to warrant post-conviction relief from a guilty plea. Instead, the petitioner must allege and prove by a preponderance of the evidence that such failure rendered the plea decision involuntary or unintelligent. *Id.* In the recent *Graves* decision, the court again plainly evidenced its skepticism toward post-conviction challenges to ancient guilty pleas. *See Graves*, at 963. We also observe that the *White* court labeled post-conviction relief challenges to guilty pleas as "collateral attacks on criminal convictions...." 497 N.E.2d at 905.

 We do agree with the *Hall* majority to the extent that there might be occasions when a post-conviction challenge to a guilty plea should be considered a "direct attack" and the rule of *Boykin* rather than *Parke* should apply. We do not need to identify any such situations today. We do hold that in a situation such as that before us today, in which a defendant is no longer suffering any direct negative effects of his or her guilty plea because any sentence and probationary

period stemming from the plea has been fully served, a post-conviction challenge to such a plea should be deemed "collateral" for purposes of *Parke*. On such "collateral" review it should be presumed that a judgment was entered validly, regardless of whether the official record of a proceeding is lost, and a defendant should bear the burden of forwarding evidence of invalidity or a constitutional violation. If such evidence is forwarded, then the State must present evidence to the contrary, but it is still an inherently factual question to be resolved by the post-conviction court as to whether the violation occurred. This approach is consistent with the plain language of our post-conviction rules, which provide that a petitioner "has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Post–Conviction Rule 1(5). This is also consistent with the Supreme Court's and our supreme court's stated skepticism regarding long-delayed challenges to guilty pleas. Otherwise, and perversely, the finality of a guilty plea would decrease rather than increase as time marches on, as judges, lawyers, and reporters die or forget the details of proceedings, tape recordings become misplaced or disintegrate in crowded courthouse vaults, and the possibility of definitively proving that *Boykin* advisements were given to a particular defendant fades into oblivion. Parties should not be permitted to "game" the system in such a manner.[3]

 We also observe that the affirmative defense of laches is not by itself sufficient to preserve the integrity of final judgments in all cases. "For laches to

---

**3.** The *Hall* majority noted that our supreme court decided *Curry* well after *Parke* was decided and it could have addressed *Parke* in that opinion. *Hall*, 819 N.E.2d at 108. The fact that it did not should not be seen as having any substantial legal significance.

Courts make their decisions on the basis of arguments advanced to them by the parties. We presume that if the State in briefing *Curry* had asked our supreme court to apply *Parke*, the court would have discussed or at least mentioned it.

apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay." *Armstrong v. State,* 747 N.E.2d 1119, 1120 (Ind.2001). Prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. *Id.* Here, the State initially pled laches in response to Jackson's post-conviction relief petition. Later, after interviewing witnesses to the 1979 molestation, the State withdrew the defense because the witnesses could still recall and testify about the event. The State, therefore, could not establish the prejudice element of laches. Still, those witnesses, and especially the victim of the 1979 crime, certainly were entitled to expect that Jackson's guilty plea over twenty-five years ago had concluded the matter. They should not have to relive the event in a new trial, in the absence of clear evidence that the plea was entered in violation of Jackson's constitutional rights. Society at large also has an interest in ensuring the finality of convictions and upholding the integrity of the criminal justice system.

Here, Jackson pled guilty in 1979 to a Class D felony, for which he received a two-year suspended sentence and one year of probation. He did not file his petition for post-conviction relief until 2003.[4] *Parke* should apply here, and the mere fact that the transcript of his plea hearing is missing and no one present at the hearing can remember details of it does not warrant relief from the 1979 plea. Instead, the validity of the plea is presumed. Jackson was required to present some evidence that the *Boykin* advisements were not given in this case. He did not do so; the inability of Jackson, the trial judge, prosecutor, and defense attorney to remember what precisely was said at one plea hearing conducted decades ago was not enough. In any event, the State presented ample evidence that it would have been highly unusual for *Boykin* advisements not to be given such that any testimony to the contrary could be rebutted. The post-conviction court properly denied Jackson's petition.

### Conclusion

We adopt and apply to this case the burden-shifting approach to post-conviction *Boykin* challenges to old guilty pleas approved of by *Parke.* We are confident our supreme court would approve of such an approach, particularly given that *Zimmerman* has now clearly been overruled. The validity of Jackson's 1979 guilty plea is presumed. The loss of the record of the guilty plea hearing and the loss of memory regarding what was said at the hearing is not sufficient to overcome this presumption. We affirm the denial of post-conviction relief.

Affirmed.

MAY, J., concurs.

DARDEN, J., dissents with separate opinion.

---

4. There was no evidence presented below as to why Jackson waited over two decades to challenge his 1979 guilty plea. We surmise that Jackson is the same Edward Lee Jackson whose 1998 conviction and sentence for child molesting were affirmed by our supreme court in *Jackson v. State,* 735 N.E.2d 1146 (Ind.2000). The sentence he received in that case was the maximum fifty years for a Class A felony, plus a thirty-year habitual offender enhancement. Although not affecting our analysis in this case, this likely explains why the 1979 plea was not challenged until 2003. Unlike in Kentucky, Jackson could not directly challenge his 1979 plea on *Boykin* grounds during the 1998 habitual offender proceeding. *See Edwards,* 479 N.E.2d at 547–48.

DARDEN, Judge, dissenting.

I commend Judge Barnes on his thought-provoking and thorough analysis, but I must respectfully dissent.

*Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), certainly lends flavor to our consideration of what the effect is when a defendant who pled guilty later seeks to have that plea vacated on post-conviction relief because it is "impossible" to reconstruct the guilty plea hearing to show that he was advised of those rights mandated by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). But I believe we must continue to use *Boykin* as our starting point. As the majority explained in *Hall v. State,* 819 N.E.2d 102 (Ind.Ct.App.2004), *transmitted on transfer* March 10, 2004,

the *Boykin* decision requires that the record must show, or there must be an allegation and evidence which shows, that the defendant was informed of, and waived, three specified federal constitutional rights: the Fifth Amendment right against self-incrimination and the Sixth Amendment rights to trial by jury and to confront one's accusers. 395 U.S. at 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. The *Boykin* Court held that the waiver of the defendant's rights cannot be presumed from a silent record.

*Id.* at 105. With the import of the *Boykin* rights and *Boykin's* mandate in mind, I agree with the majority in *Hall* that we must be mindful of an important distinction between the legal landscape of applicable Kentucky law in *Parke* and that of Indiana: in Indiana, the *only* avenue available for challenging a guilty plea is by a petition for post-conviction relief. *See Tumulty v. State,* 666 N.E.2d 394 (Ind.1996) (defendant who pleads guilty may not challenge the validity of plea upon direct appeal but must pursue post-conviction procedures).

It is also worth noting that Indiana gives greater protections to criminal defendants than required by the U.S. Constitution. *See e.g. Richardson v. State,* 717 N.E.2d 32 (Ind.1999) (Indiana's double jeopardy protection); *Sims v. State,* 274 Ind. 495, 413 N.E.2d 556 (1980) (defendant in custody must be advised of right to counsel before being asked to consent to search); *Vaughan v. State,* 446 N.E.2d 1 (Ind.Ct. App.1983) ("Indiana has historically afforded the defendant more protection than is mandated by the Due Process Clause of the Fourteenth Amendment.").

In the context of *Boykin's* mandate that certain advisements to a defendant contemplating a guilty plea must not only be made but also be evidenced, I note that our supreme court rules require that records of convictions be maintained and, more particularly, that transcripts of felony guilty plea hearings be maintained for fifty-five years. *See* Ind. Criminal Rule 5. I believe this properly reflects the premium placed by public policy on keeping such records, and I believe this record-keeping is a small price to pay when weighed against the potential consequences that a defendant will likely pay if convicted as a recidivist.

Finally, while I risk being thought unduly skeptical of fellow practitioners, it is difficult for me to envision the judge or attorney who will come into court and admit having done something improper in a court proceeding. Thus, I am troubled by the fact that the result of the majority's conclusion is that if a witness comes into court and testifies that it was his or her practice to follow a certain procedure, this will suffice to establish as a matter of law compliance with a Constitutional requirement. Giving due regard to the effect of time on the human memory, it seems to me that relying on this nonspecific report—that "it was my practice" to do what

should have been done—is unacceptable to establish a matter having the Constitutional dimensions of *Boykin*.

For the foregoing reasons, I cannot agree with the burden shifting that the majority has found acceptable until such time as our supreme court adopts this approach, and I would follow the reasoning of the majority in *Hall*.