RUCKER, Justice,
dissenting.
Like the Fourth Amendment to the United States Constitution, the purpose of Article 1, Section 11 of the Indiana Constitution is not to eliminate all contact between the police and the citizenry but rather “to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.” United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)). Thus a consensual encounter between a law enforcement officer and an Indiana citizen — in which the officer makes a casual and brief inquiry — does not implicate Article 1, Section 11. In essence there is no “seizure” within the meaning of the Indiana Constitution “[a]s long as the person to whom questions are put remains free to disregard the questions and walk away.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870; Johnson v. State, 856 N.E.2d 706, 713 (Ind.Ct.App.2005) (concluding that police intrusion cannot withstand scrutiny under Article 1, Section 11 of the Indiana Constitution when an individual no longer remains free to leave the officer’s presence and there is no indication of reasonable suspicion of any criminal activity afoot); see also Brendlin v. California, — U.S. -, 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132 (2007) (affirming Mendenhall’s free-to-leave test for federal analysis).
In this case the majority concludes no seizure occurred based upon the officer’s interpretation of Clarke’s body language and that Clarke made no attempt to change his negative answer to the question of whether he would “mind” if his car was searched. I am of the view that this observation sheds no light on the question of whether Clarke was seized within the meaning of Article 1, Section 11. “To the extent that there is anything ambiguous in the show of force ..., the [free-to-leave] test resolves the ambiguity” by utilizing the objective test of what a reasonable person would understand as a display of authority. Brendlin, 127 S.Ct. at 2408.
The record shows Officer Eastwood responded to an anonymous tip of a “black car with nice rims” parked in front of an apartment building from which someone was selling narcotics. Tr. at 4. Upon arrival at the apartment building, Officer Eastwood pulled in behind Clarke’s vehicle, activated the rear flashers and placed the spotlight on the vehicle so she could see what was inside the parked vehicle before approaching. Tr. at 5. Officer Eastwood asked for identification and if there was anything illegal in the car before running Clarke’s and the passenger’s information through the computer. App. at 87. Both answered “no.” Id. After having found no problems and returning to Clarke his license and registration, Officer Eastwood did not inform Clarke he was free to leave, nor did she cite him for an infraction or other violation of the law. Instead Officer Eastwood informed Clarke she was investigating a report of narcotics activity and asked again if there was anything *1122 illegal in the car. Tr. at 8. Clarke responded “no.” Id. Clarke was then asked whether he cared if she searched his car. He did not answer the request but again responded that he did not have anything illegal in the car. Id. at 8-9.
At this point I am convinced that no Hoosier could reasonably assume that he or she could simply walk away. See, e.g., United States v. Drayton, 536 U.S. 194, 212, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (Souter, J., dissenting) (A later request to search prefaced with “Do you mind ...” after having been told by officers that they were conducting a bus interdiction would naturally have been understood by citizens in the terms with which the encounter began. No reasonable passenger could believe “that he stood to lose nothing if he refused to cooperate with the police, or that he had any free choice to ignore the police altogether.”); Combs v. State, 851 N.E.2d 1053, 1059 (Ind.Ct.App.2006) (finding a reasonable person having pulled over his vehicle without any prompting by the officer would not have felt free to leave after the officer indicated he was investigating a report of a suspicious vehicle and asked the driver for identifying information). In essence, immediately before Clarke gave his equivocal response to the question of whether he would “mind” if the officer searched his car, he had been seized within the meaning of Article 1, Section 11. This is so because neither he nor any other Indiana citizen in his circumstance could have felt free to disregard the officer’s questions and leave the scene. And because the officers lacked reasonable suspicion to seize Clarke, their subsequent search of his car without a warrant was constitutionally infirm unless there was an exception to the warrant requirement.
The State contends there was such an exception, namely consent to search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (stating it is well-settled that a consent to search is an established exception to the warrant and probable cause requirement); Perry v. State, 638 N.E.2d 1236, 1240 (Ind.1994) (“[A] valid consent to search obviates the warrant requirement.”). It is of course the case that even under circumstances of a routine traffic stop, the Indiana Constitution does not prohibit a police officer at the conclusion of the stop, without any independent reasonable suspicion of illegal activity, from seeking consent to search the car. See Callahan v. State, 719 N.E.2d 430, 439 (Ind.Ct.App.1999). The same is true here even though, as the trial court noted, there was no traffic stop because Clarke’s ear was already parked when officers arrived on the scene. The underlying rationale for this rule is that where an individual gives permission to search either his person or property, the governmental intrusion is deemed presumably reasonable. Jones v. State, 655 N.E.2d 49, 54 (Ind.1995).
But we have held that under the Indiana Constitution “a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent.” Pirtle v. State, 263 Ind. 16, 323 N.E.2d 634, 640 (1975); see also Sims v. State, 274 Ind. 495, 413 N.E.2d 556, 559 (1980) (A person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given.). To determine whether a defendant is in custody “we apply an objective test asking whether a reasonable person under the same circumstances would believe themsélf to be under arrest or not free to resist the entreaties of the police.” Torres v. State, 673 N.E.2d 472, 474 (Ind.1996) (emphasis added, quotation omitted). Stated somewhat differently, a person is not in custody where he or she is “unrestrained and ha[s] no reason to believe he [or she] could not leave.” *1123 Huspon v. State, 545 N.E.2d 1078, 1081 (Ind.1989).
In this case the majority distinguishes between “custody” and “seizure” concluding that “Pirtle advisements” are required for the former, but not the latter. I see no principled distinction between the two. By whatever nomenclature, the key question to be asked is whether the person is entitled to disregard police questioning and walk away. If not, then the person must be informed of the right to consult with counsel about the possibility of consenting to a search. Otherwise no valid consent can be given. Indeed the primary authority on which the majority relies makes this very point. Discussing Jones, 655 N.E.2d at 56, the Court in Cooley v. State, 682 N.E.2d 1277, 1279 (Ind.1997), recognized, “Had Jones refused to give the police permission to search, he would have been given two citations and been free to leave.” In this case Clarke had no such option. And because he was not given a Pirtle advisement any alleged consent was invalid as a matter of state law. Accordingly, I agree with the result reached by the Court of Appeals and would reverse the trial court’s denial of Clarke’s motion to suppress.