RUCKER, J.,
dissenting.
At stake in this case is whether a person in police custody is entitled to be advised of his right to the assistance of counsel before consenting to a buccal swab for DNA. The majority says no. I respectfully disagree.
The majority acknowledges that “Most courts that have addressed the constitutionality of cheek swabs have concluded that a cheek swab is a “search” for the purpose of the Fourth Amendment.” Op. at 1232. But the majority seems to take issue with “most courts” by declaring “Fourth Amendment principles seem to suggest that DNA has more in common with fingerprints than it does with blood alcohol....” Op. at 1236-37. Although the majority’s discussion concerning fingerprints is interesting and informative, it seems to me to have little bearing on the question of whether for purposes of the Fourth Amendment a DNA swab is a search.
Even though holding that invasions of the body are searches, and thus are entitled to the protections of the Fourth Amendment, see Skinner v. Ry. Labor Executives’ Ass’n, 489 U.S. 602, 616-17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (blood, breath, and urine samples), the United States Supreme Court has not spoken on the question of whether a DNA swab is a search. However, every Federal Circuit Court addressing this issue has expressly concluded that the gathering and testing of DNA samples, by either a blood sample or a cheek swab, are searches subject to the Fourth Amendment.[1] Other Federal Cir *1240 cuit Courts, while not expressly so pronouncing, have treated DNA sampling as though it were a search under the Fourth Amendment.[2] Until today this jurisdiction’s case authority has also unambiguously adhered to the view that the taking of a DNA sample from a person’s body constitutes a search. See, e.g., Balding v. State, 812 N.E.2d 169, 172 (Ind.Ct.App.2004) (“[t]he taking of a biological sample, such as a DNA sample, constitutes a ‘search’ for purposes of the Fourth Amendment.”); Patterson v. State, 742 N.E.2d 4, 9 (Ind.Ct.App.2000) (same).
Based on the foregoing authority it is clear to me that a cheek swab is a search within the meaning of the Federal Constitution. And this can be no less true under the Indiana Constitution. The United States Constitution establishes a minimum level of protection to citizens of all states. See Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). But a state is free as a matter of its own constitutional law to confer rights above the floor of constitutional safeguards found in the United States Constitution. See, e.g., PruneYard Shopping Ctr. v. Robins, 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In fact on the question of search and seizure the Indiana Constitution does provide greater protection than the Federal Constitution. This brings me to my next point.
The heart of this case concerns the validity of the defendant’s consent to search given while the defendant was in police custody. Article 1, Section 11 of the Indiana Constitution provides, “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated.... ” “While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution’s Search and Seizure clause is given an independent interpretation and application.” Myers v. State, 839 N.E.2d 1146, 1153 (Ind.2005).
Indiana law on consent to a search given while in custody derives from Pirtle v. *1241 State, 263 Ind. 16, 323 N.E.2d 634 (1975). In that case Pirtle was in police custody due to an arrest for possession of a stolen automobile. Id. at 636. The police read Miranda rights to him in the squad car and again at the police station. Id. at 637. Pirtle did not waive his rights either time and requested to speak to an attorney when questioned at the station. Though counsel was not provided, approximately twelve hours later two other officers questioned Pirtle again. One asked for permission to search his apartment, which Pirtle authorized. The police searched the apartment and discovered witnesses and direct evidence linking Pirtle to a homicide. Id. Pirtle challenged the admission of that evidence, and this Court said:
When a defendant is in custody at the police station there is no ‘practical’ reason for depriving him of the assistance of counsel in making the decision whether to consent to a search.... We hold that a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent. This right, of course, may be waived, but the burden will be upon the State to show that such waiver was explicit, and, as in Miranda, the State will be required to show that the waiver was not occasioned by the defendant’s lack of funds.
Id. at 640. Five years later the Court declared “There is no ambiguity in the Pirtle opinion.... [W]e recognized the right of those in custody to have the advice of counsel at the point where a consent to search is requested, and expressly and clearly imposed upon the State the burden in court of demonstrating an explicit waiver of such right as a condition to introducing the fruits of such searches.” Sims v. State, 274 Ind. 495, 413 N.E.2d 556, 559 (1980), ovemded on other grounds by Wright v. State, 658 N.E.2d 563 (Ind.1995).
Pirtle and Sims have long been understood to “stand for the proposition that, under the Indiana Constitution, a person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given. Merely giving an arrestee the Miranda advisement before interrogation is insufficient to inform him of his right to consult with counsel before consenting to a search.” Torres v. State, 673 N.E.2d 472, 474 (Ind.1996) (emphasis added) (internal citations and quotations omitted); see also Campos v. State, 885 N.E.2d 590, 601 (Ind.2008) (“Article [1], section 11 of the Indiana Constitution requires that a person in custody explicitly waive the right to counsel before giving a valid consent to a search.”) (internal citations and quotations omitted). This right is unique to Indiana and has no parallel under the Federal Constitution. See United States v. LaGrone, 43 F.3d 332, 337 (7th Cir.1994) (“A person in custody has no federal constitutional right to consult with an attorney before consenting to a search of his property. However, the Indiana [C]onstitution does afford such a right.”). And, where a defendant’s rights under Pirtle have been violated, the fruits of the search are not admissible in court. See Brown v. State, 653 N.E.2d 77, 80 (Ind.1995) (referring to Article 1, Section 11, and declaring, “our state constitution mandates that the evidence found as a result of [an illegal] search be suppressed. Only by such suppression can the privacy of all Hoosiers be adequately protected.”) (internal citation omitted).
Although hedging on whether it believes a cheek swab for DNA is a search — a matter that is settled in my view — the majority nonetheless proceeds to address the implications of Pirtle and declines to enforce its constitutional protection on grounds that the intrusion here was *1242 “slight” and not very “serious.” Op. at 1238, 1289. And it implies that Pirtle is applicable only for searches of homes and automobiles. Id. at 1238-39. As to this latter point, the Indiana Constitution makes no such distinction. Instead, the constitution protects Hoosiers against “unreasonable searches” of “their persons” as well as their “houses, papers, and effects.” [3] Importantly, as this Court has declared, “Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions.” Holder v. State, 847 N.E.2d 930, 940 (Ind.2006) (emphasis added) (internal quotations omitted). Certainly, Hoosiers are entitled to no less protection under Article 1, Section 11 of the Indiana Constitution. And precisely because the police did not obtain a warrant before conducting the search, it was “per se unreasonable.” That is, the search was unreasonable as a matter of law. And although there are a number of “specifically established and well-delineated exceptions” there is no DNA exception to the warrant requirement.
Concerning the notion that the body invasion here is “slight” and not very “serious” or in essence “minimally intrusive,” certainly this cannot mean that one’s body cavity and the DNA it yields are areas in which a person does not maintain a reasonable expectation of privacy. See Smith v. State, 744 N.E.2d 437, 439 (Ind.2001) (acknowledging a legitimate expectation of privacy in body and blood samples, and in the DNA they contain). The constitutional standard for searches is reasonableness, not intrusiveness, seriousness, or weight.
Where courts have permitted DNA searches or other bodily intrusions, they have done so not merely on the basis that the search is “minimally intrusive,” but rather because either a warrant or an exception to the warrant requirement was present. The bodily intrusions cases cited by the majority bear this out. In Schmerber v. California, the Supreme Court first concluded that the search was permissible under the “search incident to lawful arrest” exception to the warrant requirement and further “the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence” because “the percentage of alcohol in the blood begins to diminish shortly after drinking stops.... [and] there was no time to seek out a magistrate and secure a warrant.” 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (internal citations and quotations omitted). In similar fashion the taking of fingernail scrapings in Cupp v. Murphy was justified on the potential for destruction of evidence basis enunciated in the “search incident to lawful arrest” warrant exception. 412 U.S. 291, 296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), narrowed in part on other grounds by Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009)). The blood, breath, and urine tests in Skinner were permissible under the “special needs” exception to the warrant requirement. 489 U.S. at 619-20, 633, 109 S.Ct. 1402.
In addition, most courts analyzing the constitutionality of statutes requiring DNA sampling of inmates, probationers, and parolees note that such searches are excepted from the warrant requirement due to *1243 the petitioner’s status as a person subject to state pretrial or correctional supervision and because statutory limits circumscribe the scope of the search. See, e.g., United States v. Pool, 621 F.3d 1213, 1219 (9th Cir.2010), reh’g en banc granted (finding that the deprivation of the defendant’s liberty as a result of a judicial probable cause finding for federal felony charges was critical in allowing the conclusion that the DNA sample did not violate Fourth Amendment); United States v. Sczubelek, 402 F.3d 175, 187 (3d Cir.2005) (concluding that DNA sampling of a probationer pursuant to federal statute did not run afoul of the Fourth Amendment in part because the statute 1) limited the discretion of probation officers in taking the samples, 2) limited the purposes for which the samples could be used, 3) provided punishments for unauthorized disbursement or obtaining of DNA samples, and 4) provided for ex-pungement of the DNA information from the database upon reversal or dismissal of a conviction); Green v. Berge, 354 F.3d 675, 679-81 (7th Cir.2004) (Easterbrook, J., concurring) (holding that DNA searches of Wisconsin penitentiary inmates were permitted under the “special needs” exception and recognizing that persons subject to state supervision have reduced privacy interests concomitant with the degree of restriction on their liberty). Cf. Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (finding body cavity searches of inmates conducted pursuant to prison rules “reasonable” considering the “serious security dangers” in a detention facility).
In sum, it is clear to me that a buccal swab for DNA is a search within the meaning of the Fourth Amendment to the United States Constitution as well as Article 1 Section 11 of the Indiana Constitution. Because the search in this case was conducted without a warrant it was illegal and therefore unreasonable as a matter of law unless an exception applied. The only applicable exception in this case was consent to search, which the defendant gave. Thus there was no federal constitutional violation. But, the Indiana Constitution provides greater protection than the Federal Constitution. And under our state constitution the investigating officer was required to advise Garcia-Torres that he had a right to consult with his lawyer before consenting to the search. Because no such advisement was given, the consent was invalid as a matter of Indiana law. The evidence obtained thereby was thus inadmissible, and accordingly the trial court was required to grant Garcia-Torres’ motion to suppress the evidence. I therefore dissent and would reverse the judgment of the trial court and remand this cause for a new trial.

. See, e.g., Friedman v. Boucher, 580 F.3d 847, 852 (9th Cir.2009) (declaring ''[t]here is no question that [a pre-trial detainee's cheek] swab constituted a search under the Fourth Amendment” and concluding the swab was an unreasonable search violating the Fourth Amendment); United States v. Weikert, 504 F.3d 1, 6 (1st Cir.2007) ("Unquestionably, the extraction of blood for DNA profiling constitutes a search within the meaning of the Fourth Amendment.”); United States v. Amerson, 483 F.3d 73, 77 (2d Cir.2007) (finding in reference to statutes mandating prisoner DNA sampling, ”[i]t is settled law that ... a physical intrusion to obtain a tissue sample and a chemical analysis to obtain private physiological information about a personf] are subject to the strictures of the Fourth Amendment”); United States v. Sczubelek, 402 F.3d 175, (3d Cir.2005) ("Requiring [a probationer] to give a blood sample constitutes a Fourth Amendment search. The ensuing chemical analysis *1240 of the sample to obtain physiological data is also a search covered by the Fourth Amendment.” (internal quotation marks and citation omitted)); Jones v. Murray, 962 F.2d 302, 306 (4th Cir.1992) (in a case of prisoner DNA sampling, recognizing as "established ... that the bodily intrusion resulting from taking a blood sample constitutes a search within the scope of the Fourth Amendment”); Kohler v. Englade, 470 F.3d 1104, 1109 (5th Cir.2006) ("It is undisputed that the collection of a saliva sample for DNA analysis is a search implicating the Fourth Amendment” and recognizing a Fourth Amendment violation where a DNA swab of a suspected serial killer was obtained pursuant to a defective warrant); United States v. Hook, 471 F.3d 766, 772 (7th Cir.2006) (observing that "taking a DNA sample is a Fourth Amendment search”); Banks v. United States, 490 F.3d 1178, 1183 (10th Cir.2007) ("[AJnalyzing the DNA contained within [a] blood sample, or even from a cheek swab, must pass Fourth Amendment scrutiny.”); Johnson v. Quander, 440 F.3d 489, 493 (D.C.Cir.2006) ("There is no question that the compulsory extraction of blood for DNA profiling constitutes a 'search' within the meaning of the Fourth Amendment.”).

. See, e.g., United States v. Gross, 624 F.3d 309, 319 (6th Cir.2010) (noting in response to defendant’s contention that his DNA swab was unconstitutional, "[t]he DNA swab was only taken after a valid search warrant was taken in order to swab [defendant]”); United States v. Kraklio, 451 F.3d 922, 923 (8th Cir.2006) ("The government does not dispute the drawing of blood for purposes of DNA collection is a search subject to Fourth Amendment scrutiny.”); Padgett v. Donald, 401 F.3d 1273, 1277 (11th Cir.2005) (assessing a DNA swab for Fourth Amendment reasonableness because "[t]he [defendant] does not dispute that the statutorily required extraction of saliva for DNA profiling constitutes a 'search' within the meaning of the Amendment”).

. The same is true under the Federal Constitution. As Justice Brennan expressed in writing for the majority in Schmerber v. California, "Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned.” 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).